CHIBE JUSTICE DUVALL
deliveked the opinion op the court:
This was an action for-slander in the name of Margaret Moran, by her father and next friend, against Milton Taylor, the original petition alleging that the defendant had charged the plaintiff, in various forms ofexpression, with being a whore.
In an amended petition it was alleged that the defendant had, since the commencement of the action, slandered the plaintiff *129 by saying that she was a whore and he could prove it. The defendant answered, denying the speaking of any of the defamatory words charged.
On the trial the plaintiff attempted to prove the speaking, by the defendant, of the slanderous words charged in the original petition, and did prove, without objection, the speaking by him, after the action had been brought, the words charged in the amended petition.
There was a verdict in favor of the plaintiff for six thousand dollars. The motion of -the defendant for a new trial having been overruled, and a judgment rendered in conformity with the verdict, he has appealed to this court.
The court below, on the trial, gave to the jury the following, among other instructions: “If the jury believe from the testimony that the defendant, Milton Taylor, spoke of and concerning the plaintiff, Margaret Moran, (suing by her next friend,) the words in the petition, or amended petition, charged, at or before the filing thereof, or. words of similar import, they must find for the plaintiff, and may, in their discretion, find exemplary damages not exceeding the amount claimed in the said petition. And, in determining the amount of damages, they will consider all the facts and circumstances proven in the cause.” Other instructions were given, at the instance of the plaintiff, all proceeding upon the assumption that the plaintiff had a right to recover, as well for slanderous words spokeu by the defendant after the action had been brought, as for words spoken previously.
1. As the slanderous words which may have been spoken after the commencement of the action, constituted, of themselves, a distinct and independent cause of action, it is perfectly clear, upon well settled principles, that they could not be relied upon in this case, either as a distinct ground of recovery, or to enhance the damages to which the plaintiff might be entitled on the original cause of action, unless, as hasbeen argued, the Code of Practice has introduced such a change in the system of procedure formerly in force as will allow this, to be done-.
*130 In support of the view contended for, we are referred to sections 111 to 114,, inclusive, and sections 159 to 162, inclusive; also to the case of Brookover vs. Hurst, (1 Met. Ky. Rep., 665.)
The first four of these sections relate to the joinder of actions, and have no application to cases like the present. They refer, evidently, to causes of action existing at the time of the commencement of the suit, and not to such as arise subsequently.
The other sections relied on relate to amendments. But the amendments which they allow must be such as relate to the case actually in court, and not such as constitute an entirely new and distinct case. The language of section 162 is, that “the plaintiff and defendant respectively, may be allowed, on motion, to make a supplemental complaint, answer, or reply, alleging facts material to the case, occuring after the filing of the former petition, answer, or reply.” The facts then which this provision allows to be presented in the supplemental complaint, must be material to the case as presented in the original complaint. They must be such as serve to explain or to perfect the cause of action originally stated. Would it be contended that in an action of assault and battery, an assault committed after the commencement of the suit could be set up in a supplemental petition as an additional ground of recovery, under the section referred to?
The case of Brookover vs. Hurst is wholly unlike the present case. There the facts, which occurred after the commencement of the suit, were not only material to the case, but were" such as rendered complete and perfect the original cause of action, and entitled the plaintiff to recover on it. Here the subsequently occuring facts form a separate ground of action, having no connection with the original cause of action, and not necessary to enable the plaintiff to recover on it. The facts were not “material to the case” which was pending when they occurred, and did not serve either to perfect or explain it. It follows that the court erred in directing the jury to find for the plaintiff, if they believed the defendant spoke the words in the petition or amended petition charged, and that, in determining *131 the amount of damages, they were to consider all the facts.and circumstances proven in the cause.
It appears, however, from the bill of exceptions, that after the argument to the jury had closed, the judge expressed doubts as to the'correctness of the instruction we have been noticing, and thereupon, of his own motion, gave the jury the following additional and explanatory instruction: “The plaintiff cannot recover in this action for any words not uttered before the original petition was filed. But the evidence before the jury, as to words uttered by the defendant since the filing of the original petition, is competent to be considered by the jurj’ as bearing upon the question of malice, or the spirit and disposition with which he uttered the words complained of in the original petition, if they believe, from the evidence, such words, or words of similar import, were uttered; but the jury cannot regard such words, uttered since the filing of .the original petition, as substantive slanders for which they may give damages in this action. And this instruction is tobe regarded by the jury as a modificatipn or alteration of those heretofore given. And unless the jury believe, from the evidence in the cause, that the defendant, before the filing of the original petition, spoke of and concerning the plaintiff the words charged, therein, or words of similar import, the plaintiff cannot recover.in this action.”
The question now arises, was the error which the court had' previously committed, in presenting the law of the case to the jury, cured by this last instruction? As preliminary to the proper solution of this question, it .becomes important to ascertain, with as much precision as possible,,for what purpose, and to what extent, in an action of this kind, the plaintiff is allowed to prove the.speaking, by the defendant, pending the action, of words similar to those charged in the petition.
Upon this point the authorities leave no room for doubt or uncertainty.
In the case of Campbell vs. Thompson, (Mss. opin. winter term, 1854,) this court, after stating some of the objections to the-admissibility of. such evidence for any purpose, said, that “notwithstanding these objections, the authorities.on the question, *132 of the admissibility of such evidence, in the action of slander, though somewhat contradictory, seem to favor its admission. In the case of Bodwille vs. Swan et ux, (3 Pickering, 378.) Ch. J. Parsons states the cases on the subject, and adopts the conclusion that when the words spoken after suit brought are of similar import with those charged in the declaration, they are admissible evidence. But if the same words, spoken after suit brought, are admitted in evidence without such qualification as would inform the jury as to their legitimate effect, they ■ might well be regarded by the jury as evidence of whatever they may tend to prove, and they might consider it not only in their determination of the question of malice, but also in determining whether the words charged had been spoken, and the whole verdict might be founded upon it.” The opinion then proceeds to state that all the considerations which had been adverted to, conspire to show that, if such evidence be. admitted, it should, and especially when objected to, be accompanied with such cautionary directions, on the part of the judge, as may, as far as practicable, restrict its effect upon the verdict within the legitimate purpose of its admission — and that is, simply and merely to show the intent with which the slanderous words charged were spoken.
In the more recent case of Letton vs. Young, (2 Met. Ky. Rep., 558,) it was held that a letter written pending the action, and containing words similar in substance to those charged in the petition, was admissible for the purpose of showing malice but for no other purpose; and the question arose whether it was not the duty of the court, at the time of its admission, to caution the jury as to its effect, so that it might not receive undue weight in the assessment of the damages. And it was decided that, although an instruction had been given to the effect that the letter in question was only admissible to show malice, and for no other purpose, yet, as the instruction “is silent upon the subject of damages, and fails to caution the jury, in terms, not to increase the damages on account of the letter, the caution contained in the instruction, if it can be called a caution on that subject, could have been of no practical benefit to appellants in the matter of damages, for *133 in another instruction, given at appellee’s instance, and the only one relating to the question of damages, the jury are told in so many words, that they had the right to award such damages to the plaintiffs as they thought them entitled to, from all the facts and cireumstances proved in the case, without any allusion being made therein to the letter, or the effect to which it was entitled in the assessment of damages.” (Starkie on Slander, page 308; 2 Greenleaf on Ev., secs. 271, 418.)
The same rule must be applied to the present case, for it is obvious that the two cases are strictly analogous. Here the evidence in question had been admitted without any admonition to the jury as to the weight or effect they were to give to it. They had been instructed that in determining the amount of damages the plaintiff had a right to recover, they were to consider all the facts and circumstances proven in the cause, thus giving to the evidence of the repetition of the slander, by the defendant, pending the action, the same value and effect upon the question of damages, as any or all the other evidence before the jury. The case as thus presented by the pleadings, proofs, and instructions, was submitted to the jury, and argued by counsel. Up to this point a radical error, highly prejudicial to the rights of the defendant, had characterized the entire case, leaving, as must be presumed, its appropriate impression upon the minds of the jury. How was that error to be cured, and that impression removed? , Clearly in no other way than by a full and explicit statement to the jury of the purpose for which alone the evidence of the subsequent speaking of the slanderous words was admissible, embracing distinctly and specifically the idea that such evidence could not be considered, by them, to increase the damages which they might award against the defendant for the speaking of the actionable words charged in the original petition. This was not done, although attempted by the court, in the instruction already quoted, given after the close of the argument. In that instruction the jury were told, it is true, that the evidence was admissible on the question of malice, and that they could not regard the words, uttered since the filing of the original petU tion, as substantive slanders, for which they might give damages *134 in this action. But this language does not fairly imply, nor could the jury have probably understood from it that they were not allowed to consider the speaking of these words at all on the question of damages, or that they might not give these words the weight and effect to which they might think them entitled, in making up their estimate of the damages for the slanderous words charged in the original petition, especially as they had been distinctly told, at a previous stage of the trial, that they were to consider all the facts and circumstances proven in the cause, in determining the amount of damages. The injurious influence of a similar instruction was held in Letton vs. Young, supra, not sufficiently obviated by an admonition to the jury that evidence of the repetition of the slanderous words was admissible to show malice, and for no other purpose, because the instruction containing this admonition, was silent on the subject of damages, and failed to caution the jury, in terms, not to increase the damages on account of such repetition. The same conclusion must be adopted here.
2. To a proper understanding of the* second gi’ound relied on for reversal, a brief statement of some of the evidence will be necessary.
It appears that the wife oí the appellant (or a woman claiming to be his wife) had sued him in the Mason circuit court for a divorce. One of his grounds of defense was that she- was unchaste. On the 18th of March, 1858, the parties with their counsel met at the office of F. T. Hord, Esq., in Maysville, for the purpose of taking the deposition of Rudy to be read as ev-dence in that suit on behalf of the appellant. In the course of the examination, the witness was asked by Taylor’s counsel, if he had not seen Mrs. Taylor in company with “Peg Moran” (referring to the appellee) on the streets and at the theatre. The question was answered in the affirmative. Mrs. Taylor’s counsel then asked the witness if respectable ladies in Maysville, mentioning the names of several, did not visit the theatre. This question was also answered in the affirmative. Thereupon Taylor’s counsel said, with some indignation, that if one of the ladies named did go to the theater, *135 she did not go there with whores. Considerable excitement ensued. The same connsel then propounded in writing the following interrogatory: “Do you not know that Peggy Moran’s father has discarded her, and driven her from his house on account of her dissolute, bad conduct?” Mrs. Taylor’s counsel immediately rose up and said, it was false — that her father had never driven her from home. Taylor, the appellant, rose from his chair, and in reply to this remark, said, “he did, he did." The conversation was attended with considerable excitement.
But two witnesses testified to what occurred on this occasion — F. T. Hord and Rudy. They concur substantially in their detail of the facts. Hord stated that he was satisfied that the word “whore” was used by Taylor’s counsel and by no other person.
On the day following this occurrence the original petition in the present case was filed, charging the appellant with having said of the appellee, 1st. “The plaintiff is a whore;” 2. “The plaintiff is a strumpet and a rip;” 3. “The plaintiff is a dirty bitch;” 4. “Catharine associates with Peg Moran, that strumpet who is not fitten for any body to associate with.”
The only other evidence in support of these allegations, is the testimony oí two female witnesses who detail a conversation they had with the appellant a short time after the action had been brought. They state in substance that in that conversation the appellant was asked “what Peggy Moran had sued him for,” and that his reply was that “he had called her a whore, and she had sued him for it.” In their depositions which had been taken some months before the trial, these witnesses in referring to the same conversation, stated on cross examination that the appellant’s answer to the question was: “She sued me for calling her a whore.” They also state that in that conversation the appellant used other language defamatory of the character of the appellee.
Upon the case as thus presented by the evidence, the question arises whether the court did not err in giving the several instructions which authorized the jury to find for the plaintiff if they believed from the evidence that the defendant, before *136 the commencement of the action, spoke of the plaintiff the words charged in the original petition, or words of similar import; and especially in giving the fourth instruction asked by the plaintiff, in which the jury were told that if, before the filing of the petition, the defendant spoke of the plaintiff “any words making or importing the charge of unchastity contained in the petition, she could recover in the action.”
It has not been d.enied in argument, and indeed cannot be doubted that the effect of these instructions was to submit to the jury the question whether the words-“he did, he did,” spoken by Taylor in Hord’s office, imported “the charge of un-chastity contained in the petition,” and whether those words, spoken, as they were, in reply to what had just before been said by the counsel, were words of similar import to those charged in the petition; and if the jury so believed, to find for the plaintiff.
For the appellee it is contended that the old rule which required the plaintiff, in an action of slander, to prove the words precisely as laid, is now obsolete, and that it is sufficient to prove the substance of the words.
This is undoubtedly the doctrine recognized and acted upon by this court in the various cases cited in argument. But when the cases are examined it will be found that they fall very far short of sanctioning the principle on which the instructions before us are supposed to rest.
In Hume vs. Arrasmith, 1 Bibb, 165, the words charged were, “John Hume (the plaintiff) stole corn and I can prove it,” &c. The proof was that the defendant had said of the plaintiff “he had stolen corn and he (defendant) could prove it.” It was held that the variance between the allegation and proof was immaterial, and the objection, on that ground too technical, and could only be sustained under the old and exploded notion that the plaintiff must prove the words precisely as laid, and that this had been supplanted by the more rational doctrine that if the plaintiff proves the substance of the charge laid in the declaration it is sufficient.
In Huffman vs. Shumate, 4 Bibb, 515, the words laid in the declaration were in the third person, as that “he, (meaning *137 the plaintiff,) stole” &c., and the words proved were in-the second person, as that “you (meaning the plaintiff) stole” &c. It was held that the substance of the charge was the imputation of theft, and whether conveyed in the second or third person, the crime was equally imputed and the allusion sufficiently certain; that the old doctrine requiring proof of the words precisely as laid was exploded and that proof of the substance of the words was sufficient.
In Daily vs. Gaines, 1 Dana, 529, the only question ' was whether words charged to have been spoken in the second person were sufficiently proved by evidence of words spoken in the third person, and it was decided that they were.
To the same effect are the other cases relied on. (5 Mon. 560, 7 Mon. 315.)
In none of these cases was there any material variance between the words charged and the words proved. In none of them was there an attempt made to sustain the action by proof of equivalent words or words, of the same effect or import.
The well settled rule of pleading in actions qf this sort is, that the specific words in which the slander is conveyed, must be set forth in the petition; and that it is not sufficient to state merely the effect of the words uttered, or that the defendant charged the plaintiff with the commission of a particular crime.
In Ward vs. Clark, (2 Johnson's Rep. 9,) the second count in the declaration was for “falsely and maliciously charging and imposing on the plaintiff below the crime of perjury.” The count was held defective because “it is not alleged what particular words were spoken; nor does the plaintiff pretendió set forth the substance of the expressions of which he complains. No precedent, ancient or modern, warrants this form of pleading. The plaintiff contents himself with drawing his own inference from the declaration made, and alleges such inference without apprising the defendant of the words, or substance of the words spoken. The rule of evidence in actions of slander formerly was, that the plaintiff must prove the precise words; and that rule has been no further relaxed than to *138 admit proof of the substance of the words.” (12 Serg. & Rawle, 428.)
What the courts mean by the use of. this phrase — í'the substance of the words” — is indicated by the cases already cited, and is still more clearly shown in other judicial decisions of the highest authority. In Olmsted vs. Miller. (1 Wendell, 506,) the words charged were that the plaintiff had had sexual intercourse with three different persons whose names are stated. The proof was that the defendant had said of the plaintiff that the plaintiff was a thief; that she was fond of men; that she was a very bad woman; that the three persons named in the declaration were in the habit of visiting frequently at her house, &c. It was held that “these words, although they may be said to be equivalent to the charge of having connection with P. JB., yet, within the rule heretofore established, they are not the same in substance. The same remark is applicable to the other charges. The same idea is conveyed in the words charged and those proved; but they are not. substantially the same words, though they contain substantially the same charge but in different phraseology.”
In Wormouth &c. vs. Cramer &c., (3 Wendell, 394,) the slanderous words were set forth in the English language. They were proved to have been spoken in the German language, which was understood by the persons hearing the speaking. The court said: “The rule is that words proved must be proved as laid; that is, substantially so; and it is not enough to prove words of similar import. How can this rule be complied with when words are laid in one language and proved in another? This is emphatically proving words of similar import.”
On the authority of these and a number of other adjudged cases the rule in regard to the proof of words in actions of slander is thus stated in the American Leading Cases: “The rule is that the words must be proved substantially as they are laid; it is not enough to prove words of the same effect or import, or conveying the same idea; the words must be substantially the same words, and it is not sufficient that they contain substantially the same charge, but in different phraseology; *139 equivalent words of slander will not do.” (1 Am. Lead. Cases, 164.)
And while the proof of speaking is for the jury, the correspondence between the words spoken and laid, is for the court. (3 Wharton, 138.)
The main object of requiring the specific words constituting the slander to be stated in the petition is that the defendant may know what he has to meet, and may have an opportunity of alleging and proving matter of explanation, or defense; as that they were spoken with reference to a different subject or pei’son, or in a different sense than that in which the plaintiff thinks proper to apply them. But this object would be wholly defeated by allowing proof of words widely varying from those alleged, but which the jury might consider were words of similar import to those charged; this would be in effect to submit to the jury the legal question, what are, or are not actionable words.
It is unnecessary, in view of what has been said, to notice more in detail the several objections to the rulings of the court below in giving and refusing instructions.
For the errors mentioned the judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.