## Renaker v. Gregg.

(Decided March 7, 1912.)

### Appeal from Harrison Circuit Court.

1. Slander—Variance Between Pleading and Proof.—Where the petition charged that the defendant said "Joe Gregg 'stole' a sheep from me out of my pasture, and put it over the fence out of my place; there was wool on the fence where he put it over, and salt on the ground," and the evidence was that defendant said "Joe Greeg 'took' a sheep from me out of my pasture, and put it over the fence out of my place; there was wool on the fence where he put it over, and salt on the ground," the plaintiff failed to make out a case; and the request of the defendant for a verdict in his behalf should have been sustained.

2. Same—Material Difference Between words "stole" and "took."—In its ordinary use the word "stole" imports a crime, and to say that a person "stole" an article is to charge him with the crime of larceny; but the word "took" in its usual acceptation does not import the commission of larceny or any crime.

3. Words Charged Must Be Proven.—The substance of the material and actionable words charged must be proven. And so if the plaintiff had proved that the defendant said "Joe Gregg has stolen one of my sheep," or that "Joe Gregg stole a sheep out of my lot," or that "Joe Greeg stole one of my sheep," he would have made out a case entitling him to go to the jury, as the variance

between the language charged and the language proven would be immaterial, because the actionable slanderous words charged would have been proven, although not in the precise words in which they were laid.

4. Same—Failure to Prove Immaterial Words Charged Not Fatal.— If there had been evidence that defendant said "Joe Gregg stole a sheep from me out of my pasture" but no evidence that he said "Gregg put it over the fence" or that he said "there was wool on the fence," or that he said "there was salt on the ground," it would be sufficient to support the charge.

CHESTER M. JEWETT, J. J. OSBORNE, ROBT. B. FRANKLIN and ROBT. C. TALBOTT for appellant.

W. H. LAIL, T. E. KING, M. C. SWINFORD and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing as to Appeal No. 291 and Affirming as to Appeal No. 292.

In Appeal No. 291 the appellant Renaker seeks a reversal of a judgment against him for one thousand dollars in favor of the appellee Gregg. Appeal No. 292 is an action brought by Renaker against Gregg to vacate the judgment in favor of Gregg for one thousand dollars upon the ground of newly discovered evidence, which action was dismissed by the lower court. As the judgment for one thousand dollars must be reversed for reasons that will be stated, it is not necessary to notice further the action to vacate this judgment, except to say that the court properly dismissed the action.

The action in which Gregg obtained a judgment for one thousand dollars was for slander. His petition filed in the lower court charged that Renaker did,

"Wilfully and maliciously speak, utter and publish of and concerning him, in the presence and hearing of divers and sundry persons, these words: 'Joe Gregg stole a sheep from me out of my pasture, and put it over the fence out of my place, and I caught it and put it back; there was wool on the fence where he (meaning Gregg) put it over, and there was salt on the ground; if I could make a witness out of this little boy of mine, I would make it warm for Gregg'—intending thereby to publish of and concerning this plaintiff that he was guilty of the offense of larceny, and to charge him with the commission thereof, which said offense is an indictable offense and involves moral turpitude. Plaintiff says

that said words were absolutely false, and that they were wilfully and maliciously uttered, declared and published by the defendant of and concerning this plaintiff for the purpose of slandering and injuring this plaintiff.''

The answer of Renaker, after denying generally the averments of the petition, pleaded in mitigation the circumstances under which he spoke of Gregg in connection with the sheep, and set up the language that he used, which was not actionable.

On the trial, there was no evidence for Gregg that Renaker said he (Gregg) "stole" one of his sheep, or any evidence that contained substantially this charge. The strongest witness for Gregg was one Fryman, who testified in substance that Renaker told him that "Gregg 'took' a sheep out of his (Renaker's) pasture, and put it over the fence, and that there was salt on the grounds and wool on the fence where he put the sheep over, and if he could make a witness out of his little boy he would make it warm for Gregg." This witness also said that although Renaker did not say Gregg "stole" the sheep, that he understood him to so mean by what he did say.

Upon the conclusion of the evidence for Gregg, as well as when all the evidence was in, counsel for Renaker requested the court to direct the jury to return a verdict in his favor, but both of these motions were overruled. This request was based on the ground that there was a fatal variance between the words laid in the petition and the words proven on the trial; and, to the consideration of this question we will confine what we have to say.

There is of course a plain and well understood difference in the meaning of the words "stole" and "took." In its ordinary use and by common acceptation the word "stole" imports a crime; and, to say of a person that he "stole" an article is to accuse him of theft and charge him with being a thief, and consequently with having committed the crime of larceny. And so it was not necessary to aver that Renaker intended to accuse or that those who heard Renaker utter the words charged in the petition understood him to accuse Gregg of the crime of larceny, because the words in their ordinary and usual meaning imported this charge and were per se actionable. Barr v. Gaines, 3 Dana, 258; Hume v. Arrasmith, 1 Bibb, 165. If the words charged in the

petition had been "Joe Gregg 'took' a sheep from me out of my pasture, and put it over the fence out of my place, and I caught it and put it back; there was wool on the fence where he (meaning Gregg) put it over, and there was salt on the ground; if I could make a witness out of that little boy of mine, I would make it warm for Gregg," it is very questionable if the action could have been maintained, even if the words were accompanied by averments charging that Renaker in the use of this language intended to and did mean to charge Gregg with "stealing" a sheep and with the crime of larceny, and that the persons in whose presence and hearing he uttered the words understood him to so mean. Because these words do not necessarily or in their usual acceptation import the commission of larceny or any crime or any offense involving moral turpitude as a person might get or take a sheep out of a pasture, and might put salt on the ground to catch it, and yet not be guilty of any wrong doing. As illustrative cases on this point, we may call attention to Mills v. Taylor, 3 Bibb, 469. In that case the words laid in the declaration were "you (meaning the plaintiff) are a damned rogue and a swindler; you say you were authorized by Price and McCutchin of Philadelphia to draw bills on them; I can prove you never were authorized by Price or McCutchin to draw bills on them; and if you have any letters from them, you forged them; I can prove you are a damned rogue and a swindler." The court, in speaking of the meaning of the words used, said:

"These words in their usual plain and obvious sense, do not imply a criminal charge; they allege the plaintiff, if he had any letters from Price and McCutchin, forged them; but in the absence of an allegation that he held such letters, the charge of forgery can not be implied."

In Brown v. Piner, 6 Bush, 518, the words charged were that—

"He sheared two of Zack Austin's sheep, meaning to charge that plaintiff had stolen the wool from two of Zack Austin's sheep." "Jesse Piner sheared Zack Austin's sheep, and kept the wool; thereby meaning to charge plaintiff with the crime of larceny; all of which was slanderous."

And the court said:

"Neither of these charges imports per se a criminal act. The innuendo can not change or enlarge the legal

effect of the utterances as alone properly interpreted and understood. And therefore, the words themselves not necessarily importing actionable slander, the Circuit Court erred in instructing the jury to find for the plaintiff. * * *"

In Clay v. Barkley, Sneed 67, the words charged in the declaration were: "He killed and salted one of my hogs," and the court said these words:

"Do not necessarily mean nor imply that the hog was feloniously stolen, and without such a meaning or implication they are not actionable, when no special damage arising from the speaking of them is averred."

In Martin v. Melton, 4 Bibb, 99, the words charged were, "You (meaning the plaintiff) have sworn a damned lie, and I can prove it by Clemens." Considering the meaning of these words, the court said:

"There is no doubt the words of themselves are not actionable. They do not necessarily import perjury, or that the swearing was in some judicial proceeding. They might have been spoken in relation to some private and extrajudicial transaction; and therefore, if true, could not subject the party to a prosecution for having sworn falsely, and so not actionable." To the same effect is Curtis v. Iseman, 137 Ky., 796.

It is also quite clear that a case for Gregg, entitling him to go to the jury would have been made out by evidence that Renaker said, "Joe Gregg has stolen one of my sheep" or evidence that Renaker said "Joe Gregg stole a sheep out of my lot," or evidence that Renaker said "Joe Gregg stole one of my sheep," as the variance between the language charged and the language proven would be immaterial. The actionable slanderous words charged would have been substantially proven although not in the precise words in which they were laid. And so, if there was evidence that Renaker said, "Joe Gregg stole a sheep from me out of my pasture," but there was no evidence that he said, "and put it over the fence out of my place," or that he said, "I caught it and put it back," or that he said, "there was wool on the fence where he put it over," or that he said, "there was salt on the ground," or that he said, "if I could make a witness out of this little boy of mine I would make it warm for Gregg," a case would be make out entitling Gregg to go to the jury, because the words that he charged but failed to prove were not essential to con-

stitute his cause of action. In short the cause of action set out by Gregg in his petition would be complete and sufficient if he had only averred that Renaker said, "Joe Gregg stole a sheep from me out of my pasture." This view is well expressed in Barr v. Gaines, 3 Dana, 258. In that case, Barr brought an action of slander against Gaines, and in his petition charged that Gaines said of him, "He (meaning the plaintiff) stole John Thomas' hogs out of the pen built by Tandy Quisenberry; Robert Quisenberry told me so." "He (meaning the plaintiff) stole hogs." The evidence was that Gaines, in a conversation of and concerning Barr, some short time previous to the bringing of the suit, said that "Barr, the plaintiff, had stole a hog out of Tandy Quisenberry's pen, and that he could prove it by Bob Quisenberry." The lower court instructed the jury to find as in the case of a non-suit, upon the ground that the words spoken did not correspond with the words charged. In holding that this was error, the court said:

"The only question to be settled is, Were the words charged in the declaration, or any specification of them, sufficiently sustained by the proof, to entitle the plaintiff to this action? We think they were. The ancient strictness in this action has been greatly relaxed. Anciently, it was necessary to prove the words precisely as laid. And words charged in the third person were not sustained by the proof of words spoken in the second person, or vice versa. But this technicality has been superseded in modern decisions by the more sensible doctrine that words are to be construed according to their common acceptation and obvious import, * · * * and if the substance of the words charged be proven, or a part only of the words charged, and that part be actionable, it is sufficient. * * * The substance of the charge laid in the declaration is that the defendant said of the plaintiff, that he was guilty of hog stealing. And surely the proof that the defendant said that the plaintiff had stole a hog, substantially supports the charge. It is the same species and grade of offense charged and proved."

As noticed in this case, it was formerly the rule that the precise material actionable words laid in the declaration must be proved and as illustrating the strictness of the rule, we find in Chitty on Pleading, vol. 1, page 420, that—

"The slanderous words should be stated as they were uttered; and a proof of words spoken in the third person will not support a count for words spoken in the second, and vice versa; nor will words spoken by way of interrogation support a charge of words spoken affirmatively. * * * If the words are so laid as to import that they were spoken concerning a thing then present, and the words proved concerned and imported that they related to a thing, not then present, the variance is fatal. However, the addition or omission of a word in setting out a libel or slander will not prejudice, unless it alter the sense and the plaintiff need not prove all the words laid, if they do not constitute one entire charge, and the non-proof would not alter its meaning; though he must prove such of them as will be sufficient to sustain his action, and it will not suffice to prove equivalent expressions. Where the words omitted to be proved do not qualify or affect these proved, the omission is immaterial, as where the words were 'Ware Hawk, you must take care of yourself—mind what you are about,' the variance was immaterial where the plaintiff failed to prove the words 'mind what you are about.' "

While it is true, as said in the Gaines case, that the strict rule of the common law practice no longer obtains, it is as essential now as it was in the time of Chitty that the plaintiff should prove substantially the material actionable words charged in the petition. Proof of words of similar import or meaning or of words that were intended to and that were understood to mean the same thing as those charged will not do. It is also the practice now as it was formerly that a variance between the pleading and proof on immaterial points or in respect to immaterial words is not regarded as a fatal variance. These established rules of pleading and practice are recognized by all of the authorities, among which may be noticed Townsend on Libel and Slander, where it is said in section 364, that—

"Ordinarily, it is sufficient if the words proved correspond with those alleged; but although any mere variation of the form of expression is not material, the words alleged cannot be proved by showing that the defendant published the same meaning in diferent words, even if equivalent and of similar import.

"Sec. 365. The plaintiff need not prove all the words

laid, but he must prove enough of them to sustain the action. It is sufficient if the gravamen of the charge as laid is proved, and unless the additional words qualify the meaning of those proved so as to render those proved not actionable, the proof is sufficient. It is necessary for the plaintiff to prove some of the words precisely as charged, but not all of them, if those proved are in themselves slanderous. But he will not be permitted to prove the substance of them in lieu of the precise words. Where the whole of the words laid in any one count constitute the slanderous charge, the whole must be proved; but where there are distinct slanderous allegations in any count, proof of any of them is sufficient.''

And in Newell on Slander and Libel, page 804, the rule is thus stated:

''In actions for defamation, the material and actionable words must be proved strictly as they are alleged in the declaration. It is not sufficient to prove equivalent words. But in relation to unimportant connecting or discriptive words some latitude is allowed. The rule is that material words, those which are essential to the charge made, must be proved substantially as made. When all the words constitute one entire charge, they must all be proved, but it is not necessary to prove the whole of a continuous sentence alleged in the declaration, provided the meaning of the words proved is not varied by the omission of. the others.''

In Taylor v. Moran, 4 Met., 127, the court said:

''The well settled rule of pleading in actions of this sort is that the specific words in which the slander is conveyed must be set forth in the petition, and that it is not sufficient to state merely the effect of the words uttered or that the defendant charged the plaintiff with the commission of a particular crime. * * * And the rule is that the words must be proved substantially as they are laid. It is not enough to prove words of the same effect or import or conveying the same idea. The words must be substantially the same words, and it is not sufficient that they contain substantially the same charge but in different phraseology. Equivalent words of slander will not do.'' To the same effect is Barr v. Gaines, 3 Dana, 258; Hume v. Arrasmith, 1 Bibb 165.

As the evidence for Gregg did not under any authority that has come under our notice support the averments of his petition, we must hold that the trial court

erred in refusing to sustain the motion for peremptory instruction.

Wherefore, the judgment is reversed with directions for a new trial in conformity with this opinion.