## Templin v. Cornelius.

(Decided December 13, 1929.)

BEGLEY & HAMILTON and A. T. W. MANNING for appellant.

C. R. LUKER for appellee.

Opinion of the Court by Commissioner Tinsley— Reversing.

Appellee instituted this action to recover damages of appellant on the allegation that the latter had falsely and maliciously spoken of and published, in the presence and hearing of Finley Cornelius, and other persons, of and concerning him, these words, "Clyde Cornelius has been stealing from D. C. Byrd; and has stolen money from me," thereby falsely imputing to him the crime of larceny. He recovered a verdict for $1,000 and this appeal is prosecuted from the judgment rendered thereon.

For a reversal it is urged, first, that the words spoken are not actionable per se. This contention is without merit. Language is actionable per se when it clearly and unequivocally imports that the person accused is guilty of some felony or other crime of such turpitude as to render him liable upon indictment to some infamous punishment. Moore v. Johnson, 147 Ky. 584, 144 S. W. 765; Wooten v. Martin, 140 Ky. 781, 131 S. W. 783, Ann. Cas. 1912B, 407. The words "stealing" and "stole" in their ordinary and usual meaning import larceny and are actionable per se. Barr v. Gaines, 3 Dana, 258; Renaker v. Gregg, 147 Ky. 368, 144 S. W. 89.

2. It is next urged that the evidence is not sufficient to sustain the verdict and that appellant was entitled to a peremptory instruction. These contentions are based upon what appellant insists is a variation between the averments and the proof. It is alleged in the petition that the words complained of were spoken to Finley Cornelius. In his testimony this witness was asked:

"Q. Tell what he said about him (having reference to what appellant said about appellee)?

A. I went to see Mr. Templin to have a talk with him and when I walked in I asked him if he had found out anything about his money.

"Q. Had you learned before that that he had lost some money? A. Yes sir. He says yes, your boy Clyde Cornelius and Ted Parsley got it.

"Q. Did he say anything else about it? A. We had a right smart talk or conversation about it, and I said why do you believe my boy got it, and he said because they had some money after they left here.

"Q. Did he say anything about him getting money from anybody else? A. Yes sir.

"Q. What was that? A. He said they got some money from Carlo Byrd.

"Q. Have you told all he said about your boy stealing money? A. No sir.

"Q. Tell all he said about your boy stealing money? A. Well, I asked him if he could be mistaken about the boy stealing the money and he said he couldn't, and I asked him why he was so positive and he said because they spent the money below here, and I said somebody else could have got it, and he said no, nobody else could not have got it. . . . He says, Finley, you know the boy got the money. And he says, there is no use of you denying it. You know they got it, and I know they got it, and there is no use of you denying it."

While the phrase couched in the precise words and in their order, as averred in the petition, were not used by the witness, his testimony, as a whole, and the words he employed to express the conversation between him and appellant, out of which grew the charge and in which the words alleged were spoken, substantially contains the words charged to have been spoken, and the variance relied on is immaterial. Formerly it was necessary to prove the words precisely as charged, but this technicality has been superseded in modern decisions by the more liberal doctrine that words are to be construed according to their common acceptation and obvious import, and, if the substance of the words charged be proven, or a part only of the words charged, and that part be actionable, it is sufficient. Renaker v. Gregg, supra; Barr v. Gaines, supra.

3. It is next urged that the court should have continued the case on account of the absence of Mr. Hazelwood, senior counsel for appellant. The case was called for trial late in the afternoon. At that time Mr. Hazelwood was not present, but a young attorney, then but lately associated with him, was present. Appellant announced not ready, assigning as his only reason the absence of a material witness. Appellee then agreed that appellant's affidavit as to what this witness would testify might be read as her deposition, and the jury was selected and sworn, but, owing to the lateness of the hour, further proceedings were adjourned until next morning. On the next day, and prior to resumption of the trial, appellant moved the court to discharge the jury and continue the case because of the absence and illness of Mr. Hazelwood, and then filed affidavits, in which it was shown that Mr. Hazelwood was ill and confined to his room; that he was the only attorney with whom appellant had conferred about the case; that his associate, the young attorney, too, was unfamiliar with the facts and with the defense, and was unable to properly present appellee's defense; that Mr. Hazelwood was an old experienced lawyer, thoroughly familiar with all the facts and circumstances of the defense, and the only lawyer at that stage of the proceedings able to fairly and thoroughly present them. The answer in this case, evidently prepared by Mr. Hazelwood, contains a paragraph pleading that the witness Finley Cornelius is the father of the appellee Clyde Cornelius, and that the words charged to have been spoken by appellant were spoken to the father in good faith and as a confidential communication to the father in answer to a request and at the instance of the father, and were spoken under such circumstances as made them a privileged communication, and appellant so testified. Yet there was no instruction given upon this theory, nor was any such instruction requested, though doubtless it would have been given had the court's attention been called to it and the instruction requested. That this material defense would not have been overlooked by an experienced attorney, or one familiar with the facts and pleadings, is obvious, and substantiates appellant's request for a continuance on the ground that Mr. Hazelwood only, at that time, was capable of presenting his defense. In the case of Bone v. Blankenbaker, 71 S. W.

638, 639, 24 Ky. Law Rep. 1438, where a somewhat similar situation was presented, the court said: "The appellant, without fault upon her part, and by the casualty of the sickness of her counsel, who alone had the matter of her defense in hand, and upon whom she was relying, was prevented from presenting the defense now set forth in this case, and which is conceded to be a valid one."

In our opinion, the circumstances of this case are such that appellant was entitled to a continuance on the showing made, and that the court's refusal to grant it is error, for which the judgment ought to be reversed.

Wherefore the judgment is reversed.