## Templin v. Cornelius.

(Decided May 6, 1932.)

720

A. T. W. MANNING and BEGLEY & HAMILTON for appellant.

C. R. LUKER for appellee.

Opinion of the Court by Judge Perry—Affirming.

This is the second appeal of this case. On the former appeal, the judgment of the lower court was reversed in an opinion reported in 232 Ky. 94, 22 S. W. (2d) 421.

In that opinion, rendered upon the first appeal, a statement of the case is made, wherein it is set forth that the appellee "instituted this action to recover damages of the appellant on the allegation that the latter had falsely and maliciously spoken of and published, in the presence and hearing of Finley Cornelius, and other persons, of and concerning him, these words, 'Clyde Cornelius has been stealing from D. C. Byrd, and has stolen money from me', thereby falsely imputing to him the crime of larceny. He recovered a verdict for $1,000 and this appeal is prosecuted from the judgment rendered thereon."

Upon this appeal it was further held that the slanderous words imputing crime to the appellant were actionable per se, as the spoken words "stealing" and "stole" in their ordinary and usual meaning import larceny. Further, it was held that in this action, based on language charging the plaintiff with stealing money, a variance was not shown between the averments and the proof, as the substance of the words charged was proven.

The judgment of the lower court was reversed upon that appeal upon the grounds that error was committed because of the lower court's not granting a continuance asked on account of the absence, due to sickness, of the chief counsel employed by appellant to conduct his defense. Due to his absence, it appears the defendant did not have the benefit upon his trial of an instruction given upon a privileged communication.

Upon the retrial of this case, plaintiff again recovered damages against the defendant for $1,500, and, upon defendant's motion and grounds for a new trial being overruled, he has prosecuted this appeal, seeking reversal of the judgment upon the grounds that (1)

statements attributed to appellant made to the father of the infant appellee were qualifiedly privileged communications; (2) that instruction (e), read in connection with instructions (a), (b), and (c), erroneously instructed the jury that "malice in law arises from voluntary false speaking of slanderous words, imputing crime to another in the hearing of some other person or persons" and disregards the circumstances of this case; and (3) two of the jurors being near relatives of the appellee, the trial court abused a sound discretion in overruling the motion and grounds for a new trial upon this showing.

Appellee, Clyde Cornelius, suing by his father, Finley Cornelius, his next friend, in his petition averred as above stated that the defendant, Grant Templin, on June 30, 1928, "falsely and maliciously spoke and published in the presence of and within the hearing of Finley Cornelius, and of divers other persons, and on divers other occasions, of and concerning the plaintiff, these words 'Clyde Cornelius has been stealing from D. C. Byrd, and has stole money from me', thereby falsely imputing to plaintiff the crime of larceny."

Answer was filed controverting the averments of the petition and amended answer pleading "privileged communication," and, by other appropriate pleadings, issues were joined between the parties.

The facts disclosed by the record are that at the time of the assertion of the alleged slander the appellee, Clyde Cornelius, was a youth of some 17 years of age, residing in the community where appellant was conducting a small country store. His sister, Forest Cornelius, was employed by appellant in that store, and he and another young friend, Ted Parsley, in the community were visitors at the store; that appellant, Grant Templin, discovered the loss of some of his money. Investigation of this loss led appellant, it appears, to suspect that Conley Cornelius, appellee's brother, and then the appellee, the one or the other, together with their companion, Ted Parsley, had taken the money. Appellant first complained to Forest Cornelius, his clerk and sister of appellee, that some money had been stolen from him. On the next day, or Sunday, he went to the home of appellee and Forest Cornelius, and there stated to Forest Cornelius that her brother, Conley Cornelius, and Ted Parsley had stolen his money. On Monday morning Conley Cornelius and sister, Forest Cornelius, went back to the

store of Grant Templin, where quite a dispute ensued between Conley Cornelius and the appellant, the latter accusing him with stealing his money. Appellant continued to accuse Conley Cornelius and Ted Parsley with stealing his money until later that week, when the evidence is that he demanded that Forest Cornelius pay this $12 then claimed to have been stolen by Clyde Cornelius, threatening to have her brother arrested and put in jail if she did not pay the one-half of its amount, and, according to their evidence, forced her to give a check on her father for this amount of $6 until she could bring the money.

Finley Cornelius, Clyde's father, appears to have been in Harlan at work at the time this charge against his son was made by appellant. When he and his sister Forest Cornelius went back to appellant's store, appellant again accused Clyde in the presence of his sister of getting his money. Clyde again denied that he got this money. They testified that they paid the appellant the $6, and he told them that, if he found out later that Clyde did not get the money, he would be sorry, and also gave back to Forest Cornelius the check of her father which she had given him the day before. When the father, Finley Cornelius, returned home, he went up to the Templin store and asked appellant if he had found out anything more about the stealing of his money, when, it is testified by Finley Cornelius, appellant said, "You know who stole that money, Clyde, and Ted Parsley got the money." Forest Cornelius testifies that Grant Templin said to her, in speaking of Clyde Cornelius and Ted Parsley, "They have been stealing from D. C. Byrd and have stole money from me."

Later, it appears by the father's evidence that appellant made the same charge against Clyde to him, adding that the father knew all about it and was upholding his son in his meanness, and also stated, "Your son and Ted Parsley stole my money and it is not worth while for you to deny it. That boy told you about it and you are upholding him in his meanness, and more than that, D. C. Byrd has been losing stuff all summer. These boys have been stealing down there."

This suit was thereupon filed, and out of its retrial, complaining of errors alleged to have been committed by the trial court, the present appeal is prosecuted.

Appellant denied making these statements in the words and way alleged and testified to, but states that he did tell Finley Cornelius, the father of Clyde, upon his coming to his store, that his son Clyde and Ted Parsley had taken his money and had also been taking things at Byrd's; that he made these defamatory charges without malice against Clyde but as a friend and neighbor of his family, and as a confidential communication to the father.

At the conclusion of all the conflicting evidence, the court gave substantially the same instruction (a), (b), (c), and (e) given by it upon the former trial and considered upon the first appeal, with the added instruction (d), in the former opinion indicated as proper which is as follows:

"If the jury shall believe from the evidence that on or before June 30, 1928, the defendant Templin, spoke of and concerning Clyde Cornelius, to his father, Finley Cornelius, the words or the substance of the words set out in Instructions No. 'A,' but shall further believe from the evidence that, at said time, the said Templin had received information or had knowledge from sources which he believed, in good faith to be reliable, that the words and language used about the said Clyde Cornelius were true, and that the words spoken to the said Finley Cornelius were spoken in good faith, and as a confidential communication, to the father of Clyde Cornelius, in answer to a request and at the instance of said father, then the jury shall find for the defendant, Templin, as to the statements made to said Finley Cornelius."

Appellant's main ground of objections urged for a reversal of the judgment is his complaint of these instructions. We have, because of his criticism of them, examined the instructions (a), (b), (c), and (e), which were given upon the first trial, and find that they are in all respects substantially the same as these same instructions (a), (b), (c), and (e) herein given, and, inasmuch as these instructions were before this court upon the first appeal, and were therein approved by the opinion of the court, they become the law of this case, and, being such, preclude the reconsideration and discussion of appellant's contention and urged objection as to same.

As to the instruction (d) given upon the retrial of the case, we have carefully considered the same, as well as the second instruction offered by appellant and requested given by the court, and are of the opinion that instruction (d) as given by the court is quite as favorable and quite as well presents the question of privileged communication contended for as that requested by appellant, and that such instruction fairly covers the evidence given upon the trial as to the defamatory language complained of being a privileged communication. We therefore conclude that appellant's urged objections thereto are without merit and cannot be sustained.

The issues upon this trial made by the pleadings of the parties and the conflicting evidence of the parties and their witnesses, both as to the truth of the defamatory statements charged made as well as to their meeting the test required for immunity for having been uttered as privileged communications by the appellant, were fairly submitted to the jury under the instructions as given, and we are of the opinion that the appellant has upon the whole record had a fair trial.

It is further contended by appellant that two of the jurors sitting in this case and returning the verdict against defendant were relatives of appellee, which fact was not known to the appellant at the time of accepting the jury, and which by them had been otherwise stated, and that this constitutes a sound reason and ground upon which the court should have sustained appellant's motion and grounds for a new trial upon such showing.

It is sufficient answer to this argument, however, that it appears in proof that the said two jurors alleged to be near relatives of the appellee were not such relations, but were of such distant kinship that their relationship with appellee had never been recognized or known by them at the time of being accepted upon the jury. It is further shown that one of these jurors, Fannie Watkins, instead of being influenced by such relationship in favor of the appellee, helped reduce the judgment as considered by the jury of $5,000 to $1,500 by insisting that $5,000 was too large. It is evident that the appellant was not prejudiced in his rights by the presence of these two jurors upon the jury, and we conceive the objection now made to them as frivolous and without merit.

. Judgment affirmed.