Calvin REAMS' ADMINISTRATOR (J. B. Crawford), Appellant,

v.

Willie D. GREER et al., Appellees.

Court of Appeals of Kentucky.

June 21, 1957.

Petition for Rehearing Withdrawn July 10, 1958.

Brown & Bird, Murray L. Brown, Robert B. Bird, London, for appellant.

William J. Weaver, London, for appellees.

CAMMACK, Judge.

Calvin Reams was killed on an ice-covered bridge when his car collided with a truck driven by Charles Jones, an employee of Greer Brothers. The appellant, who is administrator of Reams' estate, instituted this action against Jones and the owners of Greer Brothers—Willie D. Greer, Elmo Greer, Warren Greer and Don Young. He sought $75,000 in damages for the death of Reams, and $1,000 in property damages. The jury trial resulted in a verdict in favor of the defendants. From the judgment entered pursuant thereto, the administrator is appealing.

The collision occurred about 2:30 p. m., December 8, 1954, on the Rockcastle River Bridge, which crosses the stream separating Laurel from Rockcastle County on the road between London and Mt. Vernon. The bridge is 430 feet long, and runs in a north-south direction. Approaching from the south, a driver is able to see the entire bridge from at least 200 feet from its entrance. Beyond the bridge to the north, the road runs straight for 950 feet. The width of the pavement between the sidewalks on the bridge is 26 feet. Jones was driving the Greer Brothers' truck north from London; the Reams car was traveling south.

After the collision, the truck was entirely in the southbound lane, headed north. Reams' car, excepting a portion of the left front end, was across the northbound lane, and was headed in a northwesterly direction. Photographs taken at the scene of the collision show the front of the truck severely dented, and the left front side and left front of Reams' car demolished. The vehicles stopped with the truck's right fender overlapping the left front side of the car. A new skid mark 10 feet in length was found on the east side of the bridge, about 20 feet north of the first wreckage debris on the highway, and about 5 feet south of the point at which the truck and car came to rest.

■ The appellant contends vigorously that, regardless of the testimony of eye-witnesses for both sides, the physical facts in the case show that the jury's verdict was flagrantly against the evidence. In substance, the appellees maintained that the Reams car skidded onto the northbound lane as it entered the bridge, remained in that lane until it struck the curbing on the east side, and then bounced back into the southbound lane; and that Jones swerved sharply to his left to avoid hitting the car and struck it as it re-entered its own lane. This version of the collision was supported by Jones and two other eyewitnesses. Two eyewitnesses for the appellant testified that Reams remained in his own lane, and was struck because the truck was driven down the middle of the bridge, partly in the southbound lane. One of them, Nelson Wood, stated in addition that the Reams car had skidded, but that at most only the rear of the car crossed over into the northbound lane.

■ Seemingly there is involved a question of credibility of witnesses, the determination of which is within the province of the jury. The argument is advanced by the appellant, however, that if the Reams car were entirely in the northbound lane and the truck were swerving to the left, the right side of the Reams car and not the left would have been struck. This contention overlooks Jones' testimony and that supporting it. Jones testified:

"Well, it [the Reams car] slid with the back of the car toward the walkway in his lane and the front headed toward my lane I would say maybe 75 feet, and then it crossed into my lane and traveled I don't know just how many feet but anyway it traveled a little ways in my lane and by that time we was getting so close I saw I was going to have to do something or we were going to hit it head on in my lane, and I started to cutting my truck over left in my lane and just as I started to cut over he hit the bridge and bounced off and *headed crossways in the road in front of him.*" (Emphasis added.)

If Jones' testimony were accepted as true by the jury, the left side of Reams' car would have been the one damaged. Again the problem reduces itself to one of credibility of witnesses. We cannot say, on this record, that the physical situation points so certainly to a particular conclusion that no room is left for a contrary determination.

■ Complaint is made that the admission of testimony introduced by the appellees tending to impeach the credibility of one of appellant's eyewitnesses, Elmer Wineberry, constituted prejudicial error. A typical question from the record is, "Are you acquainted with his reputation in London and Laurel County from what people who know him say about him as to his reputation for truth and veracity?" CR 43.07 provides for the impeachment of a witness by showing his general reputation for untruthfulness. We believe that, upon being asked the quoted question, even though the word "reputation" was not preceded by the word "general," the witnesses realized that they were not being questioned concerning specific acts of untruthfulness, but rather the feeling of the community in regard to Wineberry's truthfulness. That the question was so interpreted by the witnesses is shown by the fact that no specific instances of wrongful acts were mentioned in the answers given. The witnesses came from London or Laurel County, and although none were close neighbors of Wineberry, who lived three miles from London, all stated that they were familiar with him and his reputation. The trial judge ruled correctly that the impeaching testimony was admissible.

■ Eyewitness Nelson Wood was asked whether he had made a certain prior inconsistent statement. His reply was, "I don't recall making—using those words, no sir, I don't." The appellant contends that, since Wood did not specifically deny making the statement, it could not be shown that he had. Where a witness has said he does not remember making a statement, he may be impeached by proof of prior contradictory statements. See Hensley v. Commonwealth, 264 Ky. 718, 95 S.W.2d 564; 58 Am. Jur., Witnesses, Sec. 780. The jury was admonished to receive the testimony only insofar as it tended to impeach Nelson Wood and for no other purpose. It is urged that the use of the word "impeach" instead of "contradict" was error. CR 43.07 states that a witness may be "impeached" by showing prior contradictory statements. The case of Shields v. Conway, 133 Ky. 35, 117 S.W. 340, cited by the appellant, is authority only for the proposition that evidence of contradictory statements does not amount to an impeachment of the general reputation of the witness for veracity, so as to allow the introduction of rebuttal evidence of the witness' good character. The admonition incorporated the terms used in CR 43.07 and was proper.

■■ The appellant complains that the trial judge abused his discretion in refusing to permit the jury to inspect the Reams car. Six months had elapsed between the date of the collision and the time the ruling was made. During this period the Reams car had been left in the open and exposed to the weather. A question of allowing a jury to visit the scene of an accident or to inspect property involved in one is a matter which addresses itself to the sound discretion of the trial judge. KRS 29.301; Ford v. McQueary, Ky., 239 S.W.2d 486. Numerous photographs, taken at the time of the collision and showing clearly the condition of Reams' car, were introduced in evidence. Under the circumstances of this case, the trial judge did not abuse his discretion.

■ Finally, it is argued by the appellant that his motion for a new trial should have been sustained because two of the jurors were related to the defendants. The niece of one juror, Mary Sumpter, was said to have married Don Young's brother. Mary Sumpter's daughter was said to have married a Rawlings, whose brother had married one of Willie Greer's sisters. Another juror, Robert Westerfield, was said to be a

brother-in-law of an uncle of the Greers. On their voir dire examination both jurors stated that they were not related to the appellees. In affidavits filed in response to the motion for a new trial, both jurors stated that they recognized no kinship with the appellees, and were not aware that any relationship existed. The trial judge accepted their testimony and refused to set aside the verdict. Kinship of which a juror is unaware, and which is as remote as that evidenced here, is an insufficient ground for setting aside a verdict. Witt v. Lunsford, Ky., 271 S.W.2d 35; Templin v. Cornelius, 243 Ky. 719, 49 S.W.2d 550. We find no error prejudicial to the substantial rights of the appellant.

Judgment affirmed.

BIRD, J., not sitting.