**Frank N. DALBY et al., Appellants,**

**v.**

**Norwood COOK et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 8, 1968.

Wheeler B. Boone, Lexington, for appellants.

Victor A. Bradley, Jr., Bradley, Blanton & Prewitt, Paris, for appellees.

DAVIS, Commissioner.

This appeal stems from a will contest in which the present appellants were the contestants. There was a verdict upholding the will. The appellants seek reversal of the judgment entered on that verdict claiming that: (1) One of the jurors was related to a prevailing litigant; (2) there was improper conduct by a witness in the presence of members of the jury; and (3) one of the jurors had formed and expressed an unfavorable opinion before submission of the case.

As respects the first ground of error, it appears that about a month after the verdict the appellants first learned that one of the jurors was related by marriage to one of the prevailing litigants. The juror, Mrs. Shelby Buckner, made affidavit that she had not been conscious of any relationship to Mrs. Norwood Cook, wife of one of the contestees, when voir dire examination of the jurors was conducted. She further deposed that she "is not positive even now of the type of relationship, but that it is a distant one." In treating this question the trial judge ruled that the relationship between Mrs. Buckner and Mrs. Cook was too remote to constitute a basis for granting a new trial. The trial judge expressed his opinion that Mrs. Buckner was not aware of such relationship when questioned on voir dire. In Reams' Adm'r v. Greer, Ky., 314 S.W.2d 511, a similar situation was presented, and it was held that no reversible error had occurred. There it was said:

"On their voir dire examination both jurors stated that they were not related to the appellees. In affidavits filed in response to the motion for a new trial, both jurors stated that they recognized no kinship with the appellees, and were not aware that any relationship existed. The trial judge accepted their testimony and refused to set aside the verdict. Kinship of which a juror is unaware, and which is as remote as that evidenced here, is an insufficient ground for setting aside a verdict. Witt v. Lunsford, Ky., 271 S.W.2d 35; Templin v. Cornelius, 243 Ky. 719, 49 S.W.2d 550." Id. Ky., 314 S.W.2d 514.

It is our view that the trial judge acted within his sound judicial discretion in declining to grant a new trial on the basis of the remote and unrecognized relationship of the juror to the wife of one of the litigants.

The parties concluded their evidence near the end of the day, and the court recessed until the following morning. While some of the jurors were still in the courtroom, Geneva Scott, who had testified for the appellees, accosted one of the appellants and said in substance: "Mr. Dalby, you told a lie on me and I don't appreciate it. We have been friends but this ends my friendship with you." The attorney for the appellants heard the encounter and characterized the statement of the witness as having been made in a loud voice and in the presence of a member of the jury. (It developed that the juror was Mrs. Shelby Buckner.) The attorney properly and promptly called the matter to the attention of the trial judge who conducted an inquiry in chambers respecting the situation.

The court heard the version of the incident as given by Geneva Scott and as given by appellants' attorney. There was no material variation in the accounts of the incident as related by Geneva Scott and the attorney. Witness Scott apologized for her conduct and said she had proceeded through her ignorance of court procedure and because she "was so riled up." On the following morning the court continued its inquiry into the matter by interviewing Mrs. Buckner and two other members of the jury who were thought to have overheard some portion of the encounter between Geneva Scott and appellant Dalby. Mrs. Buckner said she did hear Geneva Scott speak to appellant but she didn't understand all of what she said. The trial judge specifically admonished Mrs. Buckner that no statement made by Geneva Scott to Mr. Dalby could be considered for any purpose by any juror sitting in the case. The same admonition was given by the court to the other two jurors who had heard a portion of the conversation between Geneva Scott and appellant.

The third ground relied on for reversal also pertains to extraneous matters said to have been heard by a juror, and the ruling of the trial court relating to the incident just discussed, as well as to the third charged error, makes it appropriate to discuss the third incident before reciting the legal conclusions affecting both of them. There were affidavits filed in support of appellants' motion for new trial in which it was made to appear that Mrs. Martha Dundon, secretary to Honorable Victor A. Bradley, Jr., of counsel for the appellees, stated to Mrs. Buckner, one of the jurors: "One got $11,000, the other, $18,000, that's all they deserve." Allegedly, Mrs. Buckner was heard to say that she agreed and was seen to nod her head in assent. This incident was said to have occurred on the afternoon after the case had been concluded but before its submission to the jury the following morning. E. K. Rice, a witness who had testified for the appellees, was with Mrs. Buckner when the statements

were allegedly made to her by Mrs. Dundon. He and Mrs. Buckner said they did talk with Mrs. Dundon, although Mrs. Buckner said she could not recall the subject of the conversation. Mr. Rice said that "it is possible that Mrs. Dundon did refer to [appellants] saying they had received some insurance." Mrs. Dundon made no affidavit, nor did she in any way refute the claimed discussion with the juror, Mrs. Buckner.

In considering whether to grant a new trial on account of the Geneva Scott incident or the Martha Dundon incident, the trial judge determined that the alleged irregularities were not prejudicial in any respect to any of the parties and set forth the reasons for his conclusions in this language:

"The two incidents referred to in the affidavits occurred inadvertently, without malice, and in no way were intended to influence the jury, nor did such incidents influence the jury.

"The morning after the incidents in question, and prior to submission of said case, the Court, in the presence of counsel, questioned Mrs. Buckner and the two other jurors to whom she mentioned the Scott incident. The Court again admonished these jurors to consider nothing in their deliberations other than the law and the evidence and instructed them not to mention the incident in any manner to the other jurors.

"The Court is well acquainted with the jurors who heard this case and with the witnesses who testified as to the mental condition of Charles P. Cook and the alleged undue influence.

"The Court carefully observed the conduct of the jury thereafter, and in view of its knowledge of the jurors, the character of witnesses who testified, and the fact that a unanimous verdict was returned in approximately forty minutes, is of the opinion that said verdict was the result of the independent decision of

all the jurors, based upon the law and evidence introduced to them and was in no way influenced by the incidents set forth in Appellants' Motion.

"The Court finds that the case at bar was fairly tried and the verdict of the jury was based upon more than sufficient evidence to warrant it, and justice would not be furthered by setting aside said verdict and granting a new trial."

■ As noted in City of Louisville v. Allen, Ky., 385 S.W.2d 179, the appellate court accords weight to and is inclined to follow the decisions of the trial judge in passing on motions for a new trial, and the decision of the trial judge in such matters will not be upset unless a showing is made that he has clearly erred.

■ In Commonwealth, Department of Highways v. Pittman, Ky., 425 S.W.2d 726; Juett v. Calhoun, Ky., 405 S.W.2d 946; and Commonwealth, Department of Highways v. Garland, Ky., 394 S.W.2d 450, this court reiterated the extreme importance of the public image of the judicial system as reflected in jury trials. In those cases we pointed out that the "appearance of evil" must be avoided. We cannot place the judicial imprimatur on a jury trial in which there is such a showing of irregularity as appears in the present case. We do not look upon the Geneva Scott incident or the remote, unrecognized relationship of Mrs. Buckner to the wife of a litigant as irregularities requiring reversal, but the same may not be said respecting the alleged interview on the street between a juror and one so closely identified with the prevailing litigants as was Mrs. Dundon. We do not think it is an answer to say that reference to the amount of insurance received by the contestants was already in the trial record. Neither are we impressed by appellees' argument that the evidence was so overwhelmingly in their favor that no prejudice occurred. We are not to be understood as ruling that Mrs. Dundon had sinister purpose or that Mrs. Buckner was intentionally violating her juror's oath. What we are holding is that the good name of the jury system requires that jury trials be conducted free from outside influence in fact and that such trials must be so conducted as to leave no question of complete regularity. We think the average citizen would find it difficult to believe that a fair jury trial has occurred when a juror suffers herself to engage in conversation about the case on trial with any person, to say nothing of one as closely identified with the case as was Mrs. Dundon.

■ The admonition to juries, as prescribed by KRS 29.302, was given on more than one occasion during the course of the trial. That admonition includes the instruction that the members of the jury are "not to converse with, nor suffer themselves to be addressed by, any other person on any subject of the trial; and that, during the trial, it is their duty not to form or express an opinion thereon, until the case is finally submitted to them." The obvious purpose of the admonition is a salutary one. Violations of the admonition by jurors may not be tolerated nor may verdicts be permitted to stand when rendered by juries which have violated the admonition.

The judgment is reversed with directions to grant appellants a new trial.

MONTGOMERY, C. J., and EDWARD P. HILL, PALMORE, and STEINFELD, JJ., concur.

OSBORNE, Judge, dissents, stating that the honorable trial judge who presided over these proceedings did not think the incidents stated in the majority opinion were prejudicial to the rights of the parties. He was present and presiding in much better position than this court to evaluate the situation. I trust his judgment; therefore, I would affirm.

MILLIKEN and WILLIAMS, JJ., join in this dissent.