## Lee, etc. v. Licking Valley Coal Digger Company.

(Decided June 19, 1925.)

### Appeal from Kenton Circuit Court.

Admiralty—Workmen's Compensation Act, Though Elective, Held Impotent to Take from "Admiralty" and to Confer upon Board of Workmen's Compensation and State Courts Jurisdiction of "Maritime Cause"—"Maritime."—Workmen's compensation act, though elective, held impotent to take from "admiralty" and to confer upon board of workmen's compensation and state courts jurisdiction of "maritime cause," in view of Constitution United States, article 3, section 2, and laws enacted pursuant thereto; "maritime" pertaining to navigation or commercial intercourse upon the seas, Great Lakes and rivers, a "maritime cause" being one arising from a maritime contract, whether made at sea or on land, and "admiralty" being tribunal exercising jurisdiction over all maritime contracts, torts, injuries, or offenses, and extending to navigable rivers, whether tidal or not, in the United States.

RICHARD G. WILLIAMS and JOHN D. CARROLL for appellant.

MYERS & HOWARD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Willis Lee, husband of appellant, Marie Lee, was drowned in the Ohio river, near the city of Cincinnati, Ohio, while in the line of duty as an employe of the Licking Valley Coal Digger Company, a corporation which, with all its employes, including the deceased, Lee, had accepted the terms of the workmen's compensation law of this state, and were operating under it. Lee was working on coal barges which were being unloaded at the time by a coal digger, a kind of steam shovel. In attempting to pass from one barge to another he, by accident, fell into the river and thus came to his death.

The digger was located on a boat or barge which operated only on water, and moved up, down and across the river at the pleasure of those in charge. Appellant, Marie Lee, the only dependant of the deceased, filed claim for compensation with the board of compensation of the state, and was awarded the maximum, $4,000.00, allowed by law in such cases for death. From this award the company appealed to the Kenton circuit court where it

was held that the employment in which deceased, Lee, was engaged at the time of his death, was maritime and not cognizable by the board of workmen's compensation, and any cause of action arising out of his accidental death was cognizable exclusively in admiralty, in accordance with the provisions of section 2 of article 3 of the Constitution of the United States, and laws enacted pursuant thereto. From that judgment this appeal is prosecuted.

The question presented is one of jurisdiction. Had the board of compensation jurisdiction to hear and determine and make an award in a case which admittedly before the passage of the act creating the board, was cognizable only in admiralty?

"Maritime," says Bouvier, "pertains to navigation or commercial intercourse upon the seas, Great Lakes and rivers. A maritime cause is one arising from a maritime contract, whether made at sea or on land."

Admiralty is a tribunal exercising jurisdiction over all maritime contracts, torts, injuries or offenses, and extends to navigable rivers, whether tidal or not, in the United States.

The court of original admiralty jurisdiction in the United States is the United States district court. From this court causes could formerly be removed, in certain cases, to the circuit and ultimately to the supreme court.

Appellee insists that appellant's remedy is confined to the admiralty jurisdiction as fixed by the federal Constitution and the laws making same effective as enacted by the federal Congress. This jurisdictional question depends for its solution upon whether or not the Kentucky legislature, by its enactment of the workmen's compensation law, can divest the federal courts of jurisdiction of a subject which is and was well established, well defined and about which there was no question in the courts until the enactment of this law in Kentucky and other states of the Union.

Appellant argues that as our compensation law is elective and not compulsory, it is not in conflict with the admiralty laws, as only compulsory compensation laws have been held obnoxious to maritime laws by the Supreme Court of the United States. In this it appears to be in error as we shall later see.

In making its award the board of compensation, through its then chairman, Hon. Clyde Levy, delivered a written opinion, which because of its splendid diction and attractive reasoning, we would like to embrace in this

opinion, but its length forbids, and we content ourselves with copying only the following paragraphs:

"Willis Lee was drowned in the Ohio river on April 5, 1922, while employed by defendant as a laborer. Both he and defendant had elected to accept and operate under the workmen's compensation act, as required by law, and the average weekly wage of deceased employe at the time was $18.00. He was survived by Mary Lee, widow, claimant herein, who filed application for adjustment of claim as total dependent of deceased employe. Deceased employe was moving an empty barge below digger and while going on to the barge from digger fell backward, striking his body on the end of the digger, and fell into the river between the digger and barge and was drowned.

"The digger was used to take coal, sand and gravel from the barge to a hopper on the bank. The digger operated only on the river and the only work required of deceased employe was such as to tie or untie a line, dig a hole for the spar and other similar work incident to his employment on the digger.

"An important question presented by the record is whether or not the Kentucky workmen's compensation board has jurisdiction, or whether the facts bring the case under admiralty jurisdiction.

"It is unnecessary to enter upon an extensive review of the admiralty jurisdiction. It is well settled that the admiralty jurisdiction within its sphere is exclusive, and that state legislation affecting maritime rights is unconstitutional, because it destroys the uniformity established by the Constitution. So. Pac. Co. v. Jenson, 244 U. S. 205; 61 L. Ed. 1086; L. R. A. 1918C 451; Ann Cas. 1917E 900; 14 N. C. C. A. 596.

"If an employer and employe engaged in maritime work desire to be governed by the federal law, there is nothing in the Kentucky law that undertakes to prescribe a different liability. But there is nothing in the federal Constitution which precludes an employer and employe engaged in maritime service from accepting the workmen's compensation law of Kentucky, as a measure of their rights, if injury occurs. They are free to make a contract fixing the relative rights of the parties in such event,

which would be valid and enforceable, as a maritime contract. It is equally open to them to agree for injuries to be compensated under the terms of a Kentucky statute. There is nothing in such an agreement which affects in the slightest particular the uniformity which is deemed essential to the harmony of maritime law. The federal Constitution establishes uniformity and consistency on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states, but such a result is not affected by an agreement between an individual employer and his employe to surrender certain rights, respectively, in consideration of the rights and benefits conferred by the Kentucky law. The distinction between the two cases is that the state cannot compel employers and employes engaged in maritime service to be governed by the workmen's compensation law; but where the compensation law is elective, as in Kentucky, persons engaged in maritime employment are free to accept the workmen's compensation system, and, when so accepted, it becomes binding upon them as a contract, and supersedes other measures of liability, and compensation. This results not from the force of law, but from the fact of a contract.''

Could the parties, that is, Willis Lee and the Licking Valley Coal Digger Company, each acting for himself and itself, by contract, in conformity to the act of the Kentucky legislature, commonly called and known as the workmen's compensation law, confer jurisdiction upon the board and on state courts, which up to that time had no jurisdiction to hear and determine the rights of parties under maritime employment, and thus divest admiralty of the exclusive jurisdiction which it had up to that moment enjoyed in matters of that character? We think not.

In 7 R. L. C., page 1039, it is said:

"It is a universal rule of law that parties cannot by consent, give, as such, jurisdiction in a matter which is excluded by the laws of the land. In such a case the question is not whether a competent court has obtained jurisdiction of a party triable before it, but whether the court itself is competent under any circumstances to adjudicate a claim against the

defendant. And where there is want of jurisdiction of the subject matter, a judgment is void as to all persons, and consent of parties can never impart to it the vitality which a valid judgment derives from the sovereign state, the court being constituted by express provision of law, as its agent to pronounce its decrees in controversies between its people."

The same principle is stated in 15 C. J. 802, in these words:

"It is not within the power of litigants to invest a court with any jurisdiction or power not conferred on it by law, and accordingly it is well established as a general rule that, where the court has no jurisdiction of the cause of action or subject matter involved in a particular case, such jurisdiction cannot be conferred by consent, agreement or waiver."

Jurisdiction in matters exclusively maritime was not in the power and grace of the Commonwealth to give or confer at the time of the enactment of the workmen's compensation law. Such causes appertained to admiralty alone. The parties could not, therefore, by agreement confer jurisdiction upon the board of compensation by accepting the terms, in writing, of the compensation law. We do not think the cases of So. Pac Co. v. Jenson, 244 U. S. 205, and Knickerbocker Ice Co. v. Stuart, 253 U. S. 149, lay down a different rule. In the first case the U. S. Supreme Court said:

"And the same character of reasoning which supports this rule, we think, makes imperative the stated limitation upon the power of the states to interpose where maritime matters are involved. The work of a steveadore, in which the deceased was engaging, is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly within the admiralty jurisdiction."

Nor do we think these cases support, in principle, the contention of appellants.

It is now believed settled that a state compensation act, even though elective, is inapplicable if the person

injured was employed under a maritime contract, and was injured on waters within admiralty jurisdiction. The following cases appear to be decisive of the question: Peters v. Veasey (1919), 251 U. S. 121, 64 L. Ed. 180, 40 Sup. Ct. Rep. 65; Barrett v. Macomber (1918), 253 Fed. 205; Duart v. Simmons (1918), 231 Mass. 313, 121 N. E. 10; Dorman's Case (1921), 236 Mass. 583, 129 N. E. 352; Thornton v. Grand Trunk-Milwaukee Car Ferry Co. (1918), 202 Mich. 609; Floppen v. Peter J. Fase & Co., 219 Mich. 136; Soderstrom v. Curry & Whyte (1919), 143 Minn. 154; O'Brien v. Scandanavian American Line (1920), 94 N. J. L. 244, 109 Atl. 517; Neff v. Industrial Commission (1917), 166 Wis. 126.

This great array of authority supporting the view that elective compensation acts are equally as impotent to take jurisdiction of maritime causes from admiralty as similar acts which compare in nature, appear to settle the question. Admittedly the great weight of authority, especially as expounded by recent cases, tends that way. The trial court having so held, its judgment is affirmed.

Judgment affirmed. Whole court sitting.