Paul Kenneth COX, Appellant,

v.

CITY OF LOUISVILLE, Appellee.

Lawrence David CLARK, Appellant,

v.

CITY OF LOUISVILLE, Appellee.

Court of Appeals of Kentucky.

March 21, 1969.

Fred J. Karem, Raymond C. Stephenson, Louisville, for Paul Kenneth Cox.

Frank E. Haddad, Jr., Louisville, for Lawrence David Clark.

William A. Stephenson, Louisville, for appellee.

REED, Judge.

Appellant, Paul Kenneth Cox, and appellant, Lawrence David Clark, sustained personal injuries in a motorcycle accident for which they brought separate suits against the appellee, City of Louisville, alleging negligence on its part. At the instance of Clark, his suit was consolidated with Cox's action. The actions were tried together and jury verdicts were returned in favor of the appellee, City of Louisville. Judgments were entered dismissing the action of each appellant. Cox and Clark both appeal. Their appeals have been consolidated and considered together.

The accident occurred about 2:30 a. m. on July 27, 1965, in the "T" type intersection of Mockingbird Valley Road and Brownsboro Road in Louisville. Cox, then age nineteen, had borrowed his brother's new motorcycle. He met Clark, who was the same age. Thereafter, Clark rode as a passenger on the motorcycle with Cox acting as the driver.

During the course of the evening, they met two of their friends, Mattingly and another young man who were also riding on a motorcycle. Mattingly was the driver of the other vehicle. This group rode around Louisville for some time visiting various drive-in restaurants until about 1:30 a. m. when they decided to head home.

They turned right off River Road onto Mockingbird Valley Road and headed in a southerly direction toward Brownsboro Road. Mattingly was some 15 feet behind Cox and Clark. As Mattingly turned the corner onto Mockingbird Valley Road his motor died and had to be re-started. Cox and Clark had continued down Mockingbird Valley Road, and Clark noticed that Mattingly's headlight had "dipped." He informed Cox, who slowed down to about 15 to 20 miles per hour. Mattingly's light then brightened, whereupon Cox increased his speed to approximately 30 to 35 miles per hour. As Mattingly came around the last curve before the intersection, he saw Cox's taillight go over an embankment past the far edge of Brownsboro Road. He and his passenger rushed across Brownsboro Road and observed that Cox and

Clark had jumped the curb and were lying injured on the golf course grounds beyond the curb.

The police were called and arrived soon after the accident. Tire marks on the curb indicated to the police the point at which the motorcycle jumped the curb, and their measurements showed it stopped some 125 feet beyond this point. A few feet south of the curb there is an 8 to 12 foot drop to the grounds of a golf course. The absence of any ground disturbance between the curb and a point 115 feet beyond indicated to the ·police that Cox's motorcycle flew some 115 feet, landed, slid 10 feet, and then came to rest. Clark landed atop Cox some 20 feet beyond and 20 feet east of the motorcycle. This motorcycle jumped Brownsboro Road's southern curb some 15 to 20 feet east of the projected middle line of Mockingbird Valley Road.

Shortly after his arrival at the hospital, Cox told the police he was traveling at 45 miles per hour when the accident occurred. On the same occasion Clark stated the speed of the Cox motorcycle was about 35 miles per hour at the time of the accident. The speed limit on Mockingbird Valley Road is 25 miles per hour.

Mockingbird Valley Road is 18 to 20 feet wide. At a point 260 feet north of Brownsboro Road's south curb, and 215 feet from Brownsboro Road's north curb, Mockingbird Valley begins to widen. At 100 feet south of this point Mockingbird Valley Road is 36 feet wide. At the point of the intersection itself, Mockingbird Valley Road has widened, or aproned, to a 185-foot width. Brownsboro Road is a 4-lane, much-traveled thoroughfare and its southern border directly across from this intersection is lined with tall trees and wide foliage.

Both Cox and Clark testified that Mockingbird Valley Road was extremely dark on the night of the accident. Cox said he had been through this intersection on one previous occasion about a year before the accident. He admitted knowledge of the existence of the stop sign. He stated that on the occasion of the accident he was looking for the stop sign. It was his testimony, however, that the lighting was so inadequate and the appearance of the intersection so deceptive that he was unable to negotiate an intended left turn onto Brownsboro Road, as a result of which he lost control of the motorcycle resulting in the accident in which he sustained extremely severe and permanent injuries.

Clark testified that he had been through this intersection a few months before the accident. He also acknowledged that he was aware of the intersection and of the existence of the stop sign. He further stated that he had been looking for the stop sign but did not realize the intersection had been reached until the motorcycle was some 10 feet from the south curb of Brownsboro Road. Clark was seriously injured but had made substantial recovery in his physical condition at the time of the trial.

A professional engineer, Professor McIntosh, testified on behalf of the appellants that the intersection was not adequately lighted and was hazardous. Louisville city police officers who investigated the accident testified that they could plainly see the stop sign and the wall of trees in their headlights from a point 200 or 255 feet back from the north side of Brownsboro Road. They also testified that the intersection was well lighted and plainly visible.

We will first consider the appeal of Cox.

It is his contention in substance that the City of Louisville was negligent as a matter of law, and that his conduct in operating his motorcycle was merely a condition from which he was injured and not a causal contribution. He reasons that the verdict of the jury and the judgment of the court entered thereon were contrary to the law and the evidence.

Cox did not move the court for a directed verdict in his favor on the issue of liability. On the contrary, he accepted the

instructions of the trial court submitting the issues of the City of Louisville's negligence and his contributory negligence to the jury. He offered an instruction on his contributory negligence which the court gave. It was not until his motion and grounds for a new trial that he undertook to question the sufficiency of the evidence conerning the issues of the negligence of the City of Louisville and his own contributory negligence.

A party waives the insufficiency of his adversary's evidence when he fails to challenge it by a motion for a peremptory instruction. Claspell v. Brown, Ky., 332 S.W.2d 851.

Cox was not entitled to a directed verdict on his own theory of liability. The proper duty of the city so far as the posting of stop signs and the lighting of streets is concerned need not be discussed. We will, purely for the sake of argument, assume that Cox's own contention relative to the duty of the city on the occasion in question was correct. Cox contends that the city had a duty to maintain this intersection in a reasonably safe condition and he was not required to anticipate a danger that might exist at the intersection unless the particular hazard was known to him. He admits he had a duty to use ordinary care in the operation of his motorcycle. The evidence was directly conflicting as to whether or not the intersection was reasonably safe, the extent of Cox's knowledge of the character of the intersection, and whether or not Cox exercised ordinary care in the operation of his motorcycle. Under Cox's own theory of liability these issues could only be resolved by the jury. Cf. City of Nicholasville v. Scott, Ky., 388 S.W.2d 612.

We now consider the appeal of Clark.

Clark's first contention is that the trial court committed prejudicial error by admitting as evidence on the trial of the action a deposition which had been taken from Mattingly.

Cox filed suit on April 5, 1966. On May 12, 1966, he took Mattingly's deposition to which Clark now directs his attack. Clark filed his suit on July 22, 1966. In October of 1966, Clark, by a motion, sought the consolidation of his suit with that of Cox. He was successful in securing the consolidation of the two actions. It was not until the day of the trial that Clark evidenced any objection to the use of the deposition. It was admitted that Mattingly met all of the requirements of an absent witness and his deposition was proper evidence to be read and considered at the trial in Cox's action. Clark requested the trial court to exclude the deposition entirely, and, failing in this, he thereupon requested a continuance of the consolidated action which the trial court refused. He expressly declined to move for separate trials, but insisted that the actions remain consolidated and be continued. Clark failed to request any type of admonition concerning the effect of the evidence as to his claim when the deposition was read at the trial.

We need not explore the ramifications of consolidation of separate actions by different plaintiffs against the same defendant under CR 42. In the present instance, there was no conflict of interest between Cox and Clark on the issue of the defendant's liability. It must be conceded that the evidence in the form of the deposition was fully admissible in Cox's action. Clark sought the consolidation and insisted that the actions remain consolidated with full knowledge of the existence of the evidence. He requested no admonition concerning its admissibility against him in the trial court.

In addition, the only part of Mattingly's testimony harmful to Clark was to the effect that the intersection was sufficiently well-lighted on the night of the accident so that Mattingly could not see how anyone could have missed it. Most of Mattingly's

testimony was favorable to both Cox and Clark. That part of Mattingly's evidence harmful to Clark was merely cumulative of the evidence of the police officers that the intersection was well lighted. Therefore, any error in the introduction of this deposition as evidence—and under the circumstances we are far from convinced that any error was committed—certainly was not prejudicial.

■ Clark makes the further complaint that having permitted the introduction of the deposition the trial court erred to his prejudice in not requiring the entire deposition to be read. The only part of the deposition excluded by the court was that which pertained to inadmissible photographs showing alterations and repairs made to the intersection after the accident. The admissibility of testimony in a deposition introduced as evidence upon the trial of the action is governed by the general rules of evidence. Clay, CR 26.04, p. 396. Evidence of repairs, change of conditions, or precautions after an accident or injury, is not admissible as evidence of negligence or an admission thereof. City of Newport v. Maytum, Ky., 342 S.W.2d 703.

The trial court's action in excluding this inadmissible evidence was proper.

■ Clark's next complaint is that the trial court improperly excluded from the evidence a map of the City of Louisville offered by him to show the condition of the intersection and the recommendation of the city engineer for its improvement. Clark claims the admission of this evidence was proper to show notice and knowledge on the part of the City of Louisville of the defective condition of this intersection. The exclusion of this map as evidence could not have been prejudicial. Clark's action against the city was based upon the dangerous nature of the intersection. The claimed hazards were insufficient warning in the form of a visible stop sign and inadequate lighting. These claimed hazards had allegedly been created by the city or under its authority. Clark was not required to prove knowledge by the city. The instructions of the trial court required the city to exercise ordinary care to maintain the intersection in a reasonably safe condition. Knowledge by the city of the condition of the intersection was not submitted as an element of the claim.

■ Clark's final argument is that the trial court erred in instructing the jury concerning his contributory negligence. His complaint in this respect is particularly directed toward that part of the instruction which in substance required him to have taken some action to curb the speed of the driver of the motorcycle on which he was riding as a passenger or to show at least he was not acquiescing in its rapid travel, if he knew or by the exercise of ordinary care could have seen the danger a sufficient distance before the accident occurred to have taken some action to avoid the accident.

In view of the evidence concerning Clark's knowledge of the proximity of the intersection, the evidence of his knowledge of the existence of a stop sign, coupled with the evidence concerning the speed of the motorcycle, we think the instruction was proper under the circumstances. Cf. Mattingly v. Meuter, 275 Ky. 294, 121 S. W.2d 676.

We are mindful that this accident resulted in a regrettable tragedy. We are also convinced that these consolidated suits were fairly and properly tried and are free of reversible error.

The judgments are affirmed.

All concur.