Marcia Suzanne **LESLIE**, Appellant,

v.

Anna **EGERTON** et al., Appellees.

Court of Appeals of Kentucky.

Sept. 26, 1969.

R. Vincent Goodlett, Sam G. McNamara, Hazelrigg & Cox, Frankfort, William G. Reed, Carrollton, for appellant.

William A. Carter, Bedford, Francis E. Bauman, Louisville, for appellees.

DAVIS, Commissioner.

Anna Egerton was awarded judgment pursuant to a verdict against Marcia Suzanne Leslie and Virgil Handlon, jointly and severally, for damages to compensate her for personal injuries she sustained when she was struck by Miss Leslie's automobile. The present appeal is prosecuted by Miss Leslie. Handlon, jointly liable with Miss Leslie under the judgment, did not appeal but appears with Mrs. Egerton as an appellee.

Appellant presents three charges of error upon which she seeks reversal: (1) The physical facts demonstrate unerringly that appellant was free of negligence; (2) there was misconduct of jurors; and (3) the verdict is excessive.

We do not reach the first ground presented by appellant since it has not been preserved properly for appellate review. The substance of the assertion that the physical facts demonstrate Miss Leslie's freedom from negligence is equivalent to a charge of insufficiency of evidence in behalf of the plaintiff, Mrs. Egerton. Miss Leslie did not request a directed verdict in her favor at any time during the trial. That failure waived her right to challenge the sufficiency of the evidence. Claspell v. Brown, Ky., 332 S.W.2d 851, 852; Cox v. City of Louisville, Ky., 439 S.W.2d 51.

By an affidavit subscribed and sworn to by counsel for Miss Leslie, it was charged:

"3. That two male jurors and a lady, who was not a member of this jury, had their lunch at the Chappell Restaurant in Bedford, Ky., the county seat wherein this case was being tried.

"4. That while said three persons were at lunch as aforesaid they entered into a discussion of this case then on trial, and one male member of the jury seated at a table in said restaurant with the other two persons made the statement 'She will get plenty out of this case' which discussion was in violation of the Court's admonition given them immediately before adjournment for lunch recess; AND THAT COUNSEL nor his client were advised of the same until the following day."

It is significant that the trial occurred on September 13, and according to the affidavit the information came to the attention of Miss Leslie or her attorney the next day, but the affidavit was not filed until September 25 although it was subscribed according to its jurat on September 23. The record is silent as to the source of the information concerning the alleged statement of a juror. It is likewise silent as to the identity of the juror who assertedly made the remark, nor is there any

showing of effort by appellant or her counsel to obtain specific or definite information in the premises. We have written often that it is imperative that no vestige of suspicion of improper conduct by jurors be tolerated. See Dalby v. Cook, Ky., 434 S.W.2d 35, 38, and the cases referred to there. We do not retreat from that position, but we feel that the appellant has failed to make a sufficient showing that there was any misconduct by any juror during the trial. To say the least, it is remarkable that the information reported in the affidavit came to the attention of appellant or her counsel on September 14 but was not reported to the court until September 25. That circumstance is not dispositive but creates misgivings as to the substance of the charged misconduct. Presumably, appellant or her attorney knew or could have learned the identity of the individual who reported overhearing the juror's comment.[1] It would appear that even slight effort would have disclosed the identity of the juror and his luncheon companion to whom the statement was allegedly made. So far as appears from the record, no effort was made by appellant to clarify or make more certain the serious allegation contained in the affidavit. The trial judge could hardly be expected to set aside a verdict upon the bare allegation that some unknown individual had reported overhearing such a statement from an unidentified member of the jury. The bare essentials of due process direct that the trial judge, the members of the jury, and opposing litigants should have substantially more opportunity to know the details of any such alleged misconduct by a juror. Although we said in Roland v. Eibeck, Ky., 385 S.W.2d 37, 7 A.L.R.3d 992, that an uncontroverted affidavit supporting a motion for new trial will be taken as true, it must be pointed out that the only truth thus established by the failure to controvert this affidavit was that some unknown person claimed to have overheard an unknown juror's statement. This was not enough.

In sum, we conclude that the affidavit filed in support of the motion for new trial was not sufficiently specific to present a justiciable issue, and the trial court properly denied the new trial insofar as that ground is concerned.

Finally, appellant contends that the damages awarded to Mrs. Egerton are so excessive as to appear to have been given under the influence of passion or prejudice and in disregard of the evidence.

The verdict awarded Mrs. Egerton $9,000 in damages plus doctors' bills. The court entered the judgment for $9,835.50, concluding that the evidence supported the addition of $835.50 for medical expenses as referred to in the verdict.

At the time of the accident, Mrs. Egerton was about sixty-three years old, unemployed, and living with her husband. The accident occurred on December 18, 1965, and on that same day Mrs. Egerton was seen and treated in the hospital at Madison, Indiana, by Dr. W. K. Sloan. Mrs. Egerton had been admitted to the hospital and referred to Dr. Sloan by Dr. Carl Cooper of Bedford. Dr. Sloan testified that X rays revealed an undisplaced comminuted fracture of the descending ramus of the pubis, which he characterized as a type of fracture of the pelvis. Also noted by the doctor were subluxation of the fourth lumbar vertebra on the fifth lumbar and spondylolisthesis of the fourth and fifth lumbar vertebrae.

Mrs. Egerton remained in the hospital for twenty-one days where she was seen at least twice daily by Dr. Sloan. She was put on absolute bed rest and provided with an overhead trapeze arrangement to enable her to manipulate herself about in the bed, quadriceps exercises were prescribed, and she received "symptomatic therapy." Dr. Sloan gave a chronological account of the several occasions upon which he saw and prescribed for Mrs. Egerton following her release from the hospital and related that

1. Cf. Flannery v. Commonwealth, Ky., 443 S.W.2d 638, decided June 27, 1969.

he prescribed a low back brace which she wore for quite some time.

 Dr. Sloan opined that Mrs. Egerton has good chances for excellent recovery. He mentioned that during a part of her early convalescence she was required to use a walker and that even after she had discontinued the low back brace she found it necessary to employ a heavy corset. The doctor was unable to say whether the spondylolisthesis had been present in Mrs. Egerton's body before the accident, although he expressed doubt that it was. Mrs. Egerton testified that she experienced extensive pain immediately following the accident and that she was required to remain bedfast at home for six weeks after leaving the hospital. She was required to utilize a wheelchair for some weeks after returning home from the hospital. She said that she has continued to suffer pain continuously since the accident. Appellant does not complain of the medical expenses allowed. Rather, she lays emphasis on Louisville & Nashville R. R. Co. v. Mattingly, Ky., 318 S.W.2d 844, wherein this court set aside a verdict as excessive because it was made to appear that the jury had failed to take into account the extent of a preexisting disabling condition of the plaintiff. The difficulty we have with this position is that there is no definitive showing that Mrs. Egerton had a preexisting disabling condition, and even if she did have, we are not persuaded that an award of $9,000 for the pain and suffering attendant upon the fractured pelvis in the circumstances at bar is so exorbitant or excessive as to indicate that the jury was motivated by passion or prejudice or acted in disregard of the evidence or instructions. It is well established that a tort-feasor is liable for all damages proximately resulting from the negligent act, even though the plaintiff's injuries may in part result from an aggravation of a preexisting physical or mental condition. T. C. Young Constr. Co. v. Brown, Ky., 372 S.W.2d 670, 99 A.L.R.2d 730; Louisville & Nashville R. R. Co. v. Daugherty, 32 Ky.Law Rep. 1392, 108 S.W. 336, 15 L.R.A.,N.S., 740; 22 Am.Jur.2d, Damages, Sections 122, 123. There was no showing that Mrs. Egerton's present condition is in any part the mere continuation of a preexisting ailment.

In Townsend v. Stamper, Ky., 398 S.W.2d 45, 12 A.L.R.3d 108, we had occasion to reiterate the principle:

" * * * that determination of the propriety of personal injury verdicts depends upon the facts of the particular case and what compensation has been upheld for similar injuries, giving consideration to changed economic conditions since the precedents were established."

The ultimate test in such cases is whether the award is so great as to strike the mind at first blush as being the result of passion or prejudice. The award of $9,000 here does not so impress us.

The judgment is affirmed.

All concur.

