**L. T. DUNCAN et al., Appellants,**

v.

**Ruth O'NAN, Executrix of the Estate of Mason Henry, Deceased, et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 6, 1970.

As Modified on Denial of Rehearing
March 27, 1970.

Damon A. Vaughn, John Scott McGaw, Madisonville, for appellants.

Tommy W. Chandler, Providence, J. D. Ruark, Morganfield, for appellees.

REED, Judge.

In this will contest suit, a circuit court jury found that a document probated in the Webster County court was truly the last will and testament of Mason Henry. The testator's 81 nieces, nephews, grand-nieces, and grandnephews, who were disappointed in their hopes of inheritance, had appealed the probate of the document to the circuit court on the grounds that Mason Henry lacked mental capacity to make a will at the time of execution of the probated document and that the testator was the victim of undue influence practiced upon him by the principal beneficiaries under the terms of the alleged will. The circuit court entered a judgment in accordance with the jury verdict and refused the motions of the contestants to dismiss their own appeal as premature or to grant them judgment notwithstanding the verdict or to afford them a new trial. The contestants appeal. We affirm the judgment of the circuit court.

Mason Henry, at the time of the execution of the will under attack on May 10, 1967, was a childless widower who had attained the age of 91 years. Although he was one of a family of twelve children, all of his brothers and sisters had predeceased him except for one sister, Ruth O'Nan, and one brother, Herman Henry. The appellants are descendants of his deceased brothers and sisters.

The will in question was prepared by Mr. Tommy W. Chandler, an attorney at law, who also supervised the details of the execution, acknowledgement, and attestation of the document. It disposed of Henry's estate in this manner: A specific bequest of $10,000 was given to Ruth O'Nan; another specific bequest of $10,-000 was given to William O'Nan (a disabled son of Ruth O'Nan and a nephew of the testator) and his wife, Illa Mae O'Nan; the rest and residue of the testator's approximately $65,000 estate was divided equally between his sole surviving brother, Herman Henry, and his sole surviving sister, Ruth O'Nan, who was designated to be the executrix of the estate. Mason Henry died in August, 1967. Shortly after his death, this will was presented for probate and the legal battle commenced.

The appellants filed an appeal in the circuit court from the probate of the document as provided by the relevant provisions of Chapter 394 of the Kentucky Revised Statutes. They thereby became entitled to a de novo determination by a jury trial on this issue: "Is this document the true last will and testament of the testator?" See Combs v. Wooton, Ky., 239 S.W.2d 981. The contestants asserted that by reason of senility, illness, and undue influence practiced upon the testator by Ruth O'Nan and Illa Mae O'Nan, the questioned document was not Mason Henry's will, and that the circuit court should set aside the county court's order admitting the document to probate and adjudge that Mason Henry died intestate. The proponents insisted that the testator possessed sufficient mental capacity to make an ef-

fective will and that he had not been subjected to any undue influence. Pretrial depositions of witnesses were taken and in due course the case came on for trial. A full-blown jury trial was held and a verdict returned. Then, for the first time, appellants undertook to secure a dismissal of their own appeal on the ground that it was premature because the county court order from which they had appealed was ineffective. They also sought alternatively a judgment in their favor on the merits of their appeal or a new trial of the same appeal. We will first discuss the contestants' assertions that are concerned with alleged errors connected with the trial, and finally consider the jurisdictional problem.

■ The argument of the contestants that they were entitled to a directed verdict because the evidence so preponderated in their favor is clearly without merit. Both sides introduced ample lay testimony and qualified medical testimony on the issues. The character of the evidence was directly conflicting. A case particularly suited for a determination by the jury was presented.

■ The trial judge refused to exclude from the courtroom Mr. Chandler, the attorney who drew the will, during the testimony of the other witnesses. The contestants complain that this constituted prejudicial error. Mr. Chandler attended the pretrial depositions at which most of the witnesses testified in substantially the same fashion as they did at the trial. Attorney Chandler made no statements to the jury; he did not participate in the examination or cross-examination of witnesses at the trial; he made no final argument. It is proper for an attorney to testify in a will contest case where he is the draftsman of the will under attack even though he represents the testator's estate. Adams v. Flora, Ky., 445 S.W.2d 420. As an attorney at law, Mr. Chandler was an officer of the court with all of the responsibility thereunto attendant. Officers of the court are generally not subject to the rule requiring exclusion of a witness from the courtroom during the testimony of other witnesses principally because the duty they bear to the court is much greater than that borne by others. It seems to us that whether to exclude such a witness rests in the sound discretion of the trial judge. Under the circumstances presented here, we find no abuse of that discretion.

■ The contestants assert that a juror was guilty of misconduct during the trial to the extent that the verdict should be vitiated. After the trial was over, a local grocer, who it appears was somewhat disappointed that he had not been named a beneficiary in the will, testified that he overheard a customer in his grocery store make remarks about the case in the presence of a juror while the trial was still in progress. The grocer's testimony was rather vague. The remarks, he recalled, were something to the effect that the customer thought Mason Henry's mental condition was all right and that "someone was just trying to get a hunk of money out of it." The customer denied making any such statements. He denied discussing the case in any manner. The juror admitted that a conversation took place in the grocery store, but also categorically denied hearing any such remarks or any discussion whatever about the case. Dalby v. Cook, Ky., 434 S.W.2d 35, has no application here. In that case the conversation was admitted for all practical purposes. The trial judge still determines the issue of credibility in this area. Here, the trial judge chose to believe the juror and the customer of the grocer. That ends the matter.

Contestants argue that prejudicial error occurred when the trial judge refused them the right to introduce testimony to impeach a witness whose testimony they had taken by deposition. Mr. Tom Withers, an attorney, was a long-time family friend of Mr. Mason Henry. Contestants desired to procure his testimony. Since Mr. Withers was a lawyer, CR 26.04(3) directed that his evidence be taken by deposition and this was the method used by contestants.

Withers testified that he had very little knowledge of the testator's property; that he had seen Mr. Henry only two or three times after the death of the testator's wife whose death occurred about a year before that of the testator; that testator told him several times during the winter before his death that he intended to make a will and that he discussed the matter briefly on these occasions. Withers said that Henry never asked him to write a will. Withers did not undertake to testify concerning the mental capacity or incapacity of the testator to make a will. Withers was asked during the deposition if he, at any time during the year preceding his testimony, had stated to anyone that he would not draw a will for Mason Henry because Henry was incompetent. He replied that he had not. At the trial, the contestants sought to introduce the testimony of George Kurtz for the expressed purpose of impeaching Withers. The trial judge ruled that a proper foundation had not been laid for impeachment; he also refused to order the personal attendance of Withers so that a foundation for impeachment might be laid. Kurtz stated by way of avowal that Withers told him on several occasions that he had refused to draw a will for Henry because Henry was incompetent. We hold that this testimony by Kurtz was properly excluded in any event.

■ This case was tried prior to our decision in Jett v. Commonwealth, Ky., 436 S.W.2d 788. Under the rule of evidence existing at the time of the trial of this case, there could have been no contradiction of Withers because he had failed to say something in his testimony that he had said outside of court. Thus the proffered testimony of Kurtz would have been inadmissible even on the issue of credibility if a foundation had been laid. Under the Jett rule, the testimony of Kurtz would have been admissible as substantive evidence upon proper foundation, if the alleged statement to him by Withers would have been admissible had it been made by Withers while testifying as a witness. Withers did

not testify concerning any opinion as to the mental condition of the testator. He stated that he had seen testator very infrequently. He had no opinion. Therefore, the alleged statements of opinion to Kurtz remained as inadmissible as if Withers had undertaken to so testify as a witness. The trial court correctly excluded the testimony of Kurtz.

■ The last trial error alleged is that the instructions to the jury were faulty. Contestants urge that the instructions should have told the jury that where a will contest is based on both lack of mental capacity and undue influence, evidence that tends to show both need not be as convincing as would be essential to prove one or the other alone. We have never instructed juries in this jurisdiction in abstract terms concerning the weight to be given evidence. The instructions given by the trial court were expressly approved in Belcher v. Somerville, Ky., 413 S.W.2d 620, as proper in the type of case presented in this instance. We find the trial free of prejudicial error.

We now finally come to grips with the only serious problem in the case, which is the contention of the contestants that the circuit court was without jurisdiction to try their appeal.

■ The exclusive mode of securing a de novo trial in the circuit court in a will contest action is by appeal from the judgment of the county court that either admits the document to record or rejects it. On such appeal procedural matters are treated with great liberality. See KRS 394.240 and Combs v. Wooton, Ky., 239 S.W.2d 981.

■ In Commonwealth, Dept. of Highways v. Stamper, Ky., 424 S.W.2d 821, and in M.S.S. Enterprises, Inc. v. Louisville Gas & Electric Co., Ky., 445 S.W.2d 425, we held that a signed paper judgment of the county court is ineffective and will not support an appeal until the county court order book wherein the judgment is recorded is duly signed.

In the instant case, the contestants styled the pleading they filed to invoke the jurisdiction of the circuit court "Appeal from an order of the Webster County Court and/or Complaint." Their pleadings affirmatively alleged that the order, admitting the writing about which they complained to probate, was recorded in the Webster County Court order book 28 at page 178, and a copy of this order was filed as an exhibit with the pleading and was incorporated in the pleading by reference. After the trial and verdict in circuit court, the contestants for the first time undertook to show that the county court order book wherein the judgment from which they appealed was recorded had remained unsigned until after the trial of their appeal. They insist that the circuit court acquired no jurisdiction and, therefore, they are entitled to have the trial considered a nullity. They apparently want to perfect a new appeal to circuit court and have the opportunity to again attack the validity of the will before another jury.

■ As we pointed out in Commonwealth, Dept. of Highways v. Berryman, Ky., 363 S.W.2d 525: "The word 'jurisdiction' is more easily used than understood." That case recognized the general elementary principle that subject-matter jurisdiction cannot be waived. A party will not be estopped to show lack of subject-matter jurisdiction at any time. The parties may not confer subject-matter jurisdiction by agreement. The problem, however, is in delineating the concept "jurisdiction of the subject matter." Chief Judge Desmond of the Court of Appeals of New York undertook to do so in In Re Estate of Rougeron, 17 N.Y.2d 264, 271, 270 N.Y.S.2d 578, 583, 217 N.E.2d 639, 643, in this language:

"In other words the rule that subject-matter jurisdiction cannot be born of waiver, consent or estoppel has to do with those cases only where the court has not been given any power to do anything at all in such a case, as where a tribunal vested with civil competence attempts to convict a citizen of a crime. In other words, 'subject matter' does not mean 'this case' but 'this kind of case' * *."

■ We realized the distinction between "subject-matter jurisdiction" and a jurisdictional element in Collins v. Duff, Ky., 283 S.W.2d 179. We held therein that where a county court undertook to determine a fact which was necessary to its jurisdiction, such determination may be binding where it is based upon representation to the court by all interested parties that the fact exists. Cf. Lee v. Licking Valley Coal Digger Co., 209 Ky. 780, 273 S.W. 542. A party will not be permitted to deny the existence of jurisdictional elements which he previously alleged or asserted. See 21 C.J.S. Courts §§ 108 and 109, pp. 161 to 167. Where the court has jurisdiction of the subject matter, statements made for the purpose of giving the court jurisdiction, after they have been acted upon, cannot be withdrawn or contradicted by the party making them for the purpose of taking away such jurisdiction. 28 Am.Jur.2d, Estoppel and Waiver, section 73 page 705.

■ The circuit court had general jurisdiction of the subject matter. It had the power to try this kind of case. A jurisdictional element of this particular case was a judgment complying with formal requisites properly entered in the county court. The contestants affirmatively alleged the existence of this jurisdictional element. The adverse parties and the circuit court acted upon the assertion of the existence of the jurisdictional element. The contestants cannot now withdraw or contradict the existence of the same jurisdictional element so as to deprive the court of the jurisdiction that they invoked.

Once it is understood that the circuit court had subject-matter jurisdiction in the pervasive sense and that the mechanics of perfecting invocation of that jurisdiction were jurisdictional elements, then the em-

phasis shifts from a power concept to a policy concept. The trial court properly overruled the objections of the contestants to the jurisdiction of the circuit court.

The judgment is affirmed.

All concur.