**Jason Michael DOYLE, An Infant, By and Through His Next Friend, Cynthia Louise DOYLE, Appellants,**

v.

**MARYMOUNT HOSPITAL, INC.; William D. Pratt, Individually, and William D. Pratt, P.S.C.; and Paul R. Smith, Individually, and Paul R. Smith, P.S.C., Appellees.**

No. 87–CA–2022–MR.

Court of Appeals of Kentucky.

Sept. 2, 1988.

Discretionary Review Denied by Supreme Court Feb. 1, 1989.

Frederick D. Nelson, Wayne F. Collier, Bulleit, Kinkead, Irvin & Reinhardt, Lexington, for appellants.

Donald P. Moloney and Deddo G. Lynn, Hays, Moss & Lynn, Lexington, John G. Prather, Jr., Somerset, Brian House, Tooms & House, London, for appellees.

Before CLAYTON, McDONALD and MILLER, JJ.

McDONALD, Judge:

The appellant, Jason Michael Doyle, was born on June 11, 1983, to the appellant, Cynthia Doyle, and her husband, Steven Doyle, at Marymount Hospital, Inc., in London, Kentucky. Although Jason at first appeared healthy, the day after his birth he began to show signs of being seriously ill. On June 13 he was admitted to the University of Kentucky hospital and was diagnosed as having necrotizing enterocolitis, an infectious disease of the intestines. Jason ultimately had to have his large intestine removed.

This medical negligence action was commenced on Jason's behalf by his mother against the appellees, Marymount Hospital and Drs. Pratt and Smith, his attending physicians at Marymount, for their alleged failure to promptly and properly recognize and treat Jason's condition. The case was tried in the Laurel Circuit Court in May, 1987. The trial, which lasted for eight days, ended with a jury verdict in favor of all the defendants by a vote of nine to three.

On June 29, 1987, the appellants filed a timely motion for a new trial based on the misconduct of one of the jurors, Kenneth Miracle. The motion was accompanied with the affidavit of Robert Ledington, the owner and operator of Rob's Body Shop in East Bernstadt, Kentucky. The affidavit provided in part as follows:

> I have known Kenny Miracle for several years. A few weeks ago, Kenny came to my body shop one evening and told me he had been picked as a juror on a medical malpractice case in London. He told me he had just been picked as a juror

that day. He told me that based on what he had heard from the lawyers that day, he didn't think the lady and the child that was bringing suit against the doctors had a good case.

During the next week or so, I talked with Kenny several more times. He never said anything specific that I can remember, but I got the impression he had already decided against the lady and the child.

In addition, the appellants submitted the affidavit of Gladys Harris, a juror who stated that the initial vote was six jurors in favor of Jason Doyle and six for the defendants, and that Miracle "yelled and cursed at the jurors who were for Jason Doyle, interrupted them when they tried to disagree, and was very intimidating."

The appellees Pratt and Smith countered the motion for a new trial with the affidavit of the offending juror, Miracle. He acknowledged discussing the case with Ledington thus:

I remember talking to Rob Leddington [sic] on Tuesday of the second day of trial. I told him, only from what I had heard during the opening statements and the trial up to that point, the plaintiff did not have a lot going for her.

Miracle steadfastly denied, however, forming any opinion in the case until he "read the jury instructions in the jury room."

The appellants were allowed to reply to the appellees' responses to the motion for a new trial after which the matter was submitted on the record. The motion was denied on September 2, 1987. We understand the reluctance of an overworked trial court to grant a new trial, which would most likely take another eight days, wherein the question addressed is a close call. For busy trial courts the granting of new trials is akin to self-inflicting a wound.

▮ Before discussing the primary issue raised in this appeal, we will address the issues relating to the propriety of the admission and consideration of the affidavits of Gladys Harris filed in support of the motion for a new trial and the counter-affidavit of juror Miracle. It is fairly well settled in Kentucky that, with a few exceptions not applicable to the facts herein, a verdict cannot be impeached by the testimony of a juror. *Rietze v. Williams*, Ky., 458 S.W.2d 613 (1970). This rule at times may work a hardship when juror misconduct, a valid basis for a new trial as set forth in CR 59.01, can only be shown by the testimony of a fellow juror. However, the theory is that a juror will recognize and report any misconduct to the trial court immediately and that to allow him to do it after the verdict "would invite the very kind of mischief the rule was designed to obviate." *Id.*, p. 620.

▮ The affidavit of Grace Harris was apparently not offered to show any misconduct on juror Miracle's part but was offered for the purpose of showing the impact he had on those jurors who switched their position from one side to the other. That a juror aggressively champions one position as opposed to the other in the jury room has no bearing on the issue of his misconduct outside the jury room. Thus, even if admissible, which we hold it is not, the Harris affidavit has no real probative value on the issue of whether the appellant is entitled to a new trial.

▮ Juror Miracle's affidavit also should not have been considered by the trial court in ruling on the motion as it was not timely served. CR 59.03 plainly sets the time limitations for serving counter-affidavits.[1] The affidavit was served on appellants on August 12, 1987, some forty-four days after service of the motion for a new trial.[2] The time for serving opposing affidavits pursuant to CR 59.03 is limited to 30 days.

---

1. Rule 59.03. Time for serving affidavits.— When a motion for a new trial is supported by affidavits the opposing party has 10 days after the service within which to serve opposing affidavits, which period may be extended for an additional period not exceeding 20 days either by the court for good cause shown or by the parties by written stipulation.

2. There is no explanation in the record or the briefs for the late service. The affidavit was notarized on July 13, 1987, a month before its filing and service upon the appellants.

Even if the court could in its discretion further extend the time for filing responsive affidavits for "good cause" as suggested in 7 W. Bertelsman and K. Philipps, *Kentucky Practice*, CR 59.03 (4th ed. 1984), the appellees made no motion for either an extension or enlargement of time to serve the motions nor was any good cause shown for withholding service of the affidavit for more than a month after its execution. Thus the trial court erred in admitting and considering the affidavit of juror Miracle.

▇ The primary issue of this appeal is whether the trial court abused its discretion in denying Jason Doyle's request for a new trial. We believe it did.

KRS 29A.310(1) is a codification of the duties traditionally required of jurors in this jurisdiction to insure litigants of a fair trial as follows:

> 29A.310. Admonition to jury upon separation—View of property or place.— (1) If the jury is permitted to separate, either during the trial or after the case is submitted to them, they shall be admonished by the court that it is their duty not to converse with, nor allow themselves to be addressed by, any other person on any subject of the trial; and that, during the trial, it is their duty not to form or express an opinion thereon, until the case is finally submitted to them.

The trial court properly admonished the jurors of these duties numerous times during the trial of this case. In addition to giving the admonition, the court explained the reason therefor. The following is a typical example of what the jurors in this case heard from the trial court:

> We'll not be coming back till Monday—I want to repeat the usual admonition which is not to discuss the case among yourselves, that may not be hard because you won't see each other probably, but not to discuss it with anyone else either, again going back to the families and friends that you might run into or talk to about the case. Again the reason being that it might tend to fix or form an

opinion in your minds which you should not at this point and [sic] time have. Just don't talk about it with anybody. Put it out of your minds and forget about it until you come back Monday....

It is undisputed that Miracle violated the statute despite the trial court's painstaking admonition. The facts in Ledington's affidavit, which must be taken as true, *see Butler v. Commonwealth, Department of Highways*, Ky., 387 S.W.2d 867 (1965), are that Miracle discussed the case with him on "several" occasions. While it may be impossible to know whether Miracle prematurely formed an opinion about the case, he certainly discussed the case to the extent that Ledington was able to conclude that Miracle had so formed an opinion. The import of Ledington's affidavit is not to show that Miracle had actually decided the case early in the trial but it clearly demonstrates that by discussing the case with Ledington and expressing an opinion on the merits of the case, Miracle intentionally and with disregard of the court's warning acted in such a way as to deprive the appellant of a fair trial.

This case is, we believe, controlled by our highest Court's holding in *Dalby v. Cook*, Ky., 434 S.W.2d 35 (1968), as follows:

> The admonition to juries, as prescribed by KRS 29.302, was given on more than one occasion during the course of the trial. That admonition includes the instruction that the members of the jury are "not to converse with, nor suffer themselves to be addressed by, any other person on any subject of the trial; and that, during the trial, it is their duty not to form or express an opinion thereon, until the case is finally submitted to them." The obvious purpose of the admonition is a salutary one. Violations of the admonition by jurors may not be tolerated nor may verdicts be permitted to stand when rendered by juries which have violated the admonition.

The *Dalby* Court recognized both the necessity to disapprove any juror's conduct which tends to diminish the confidence in our system of jurisprudence [3] and the prej-

---

3. "What we are holding is that the good name of    the jury system requires that jury trials be con-

udice inherent from such misconduct. None of the cases relied upon by the appellees, including *Chilton v. Commonwealth*, 170 Ky. 491, 186 S.W. 191 (1916), *Leslie v. Egerton*, Ky., 445 S.W.2d 116 (1969), and *Duncan v. O'Nan*, Ky., 451 S.W.2d 626 (1970), concern situations of actual juror misconduct and therefore are not applicable in the instant case.

In *Chilton v. Commonwealth, supra,* a juror was overheard to remark before the trial even started that the case was a "bad" one and "that he wanted to hear it." *Id.,* 186 S.W. 193. In that case the Court found no reason to believe that the juror had formed any opinion of the merits. Juror Miracle's discussions with Ledington, on the other hand, took place after the trial commenced and concerned the merits of the malpractice claim. In *Leslie v. Egerton, supra,* the Court affirmed the trial court's ruling that an "unknown" person's claim to have overheard an "unknown juror" comment about the trial at lunch was insufficient to show juror misconduct. Significantly, the Court noted it was not "retreating" from the holding of *Dalby v. Cook,* but ruled that the evidence of the alleged misconduct was insufficient as a matter of law to support a finding that misconduct had in fact occurred. *Leslie v. Egerton, supra,* 445 S.W.2d at 118. In *Duncan v. O'Nan, supra,* it was alleged a juror overheard another talking about the case. The juror denied hearing the remarks or discussing the case. The Court held that the trial court "determines the issue of credibility in this area.... That ends the matter." *Id.,* 451 S.W.2d at 629. We do not have a "credibility" issue in this case. Whether, as we held hereinbefore, the Court is restricted to consideration of Ledington's affidavit alone, or whether Miracle's testimony is also allowed, that misconduct occurred is not controverted. Juror Miracle discussed the merits of the appellant's case with Ledington despite the numerous and specific admonitions to the contrary. The issue is whether the miscon-

duct is sufficient to set aside the verdict. We believe, pursuant to the mandate contained in *Dalby v. Cook,* and our notions of the right to a fair trial, a new trial is necessary to obviate the error which occurred in this case.

The judgment of the Laurel Circuit Court is reversed and the matter is remanded for a new trial.

All concur.

---

ducted free from outside influence in fact and that such trials must be so conducted as to leave no question of complete regularity. We think the average citizen would find it difficult to believe that a fair jury trial has so occurred when a juror suffers herself to engage in conversation about the case on trial with *any* person...." (Emphasis ours.)