Nollaig PREVIS Appellant,

v.

Pete DAILEY Appellee

No. 2004–SC–0131–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

Rehearing Denied Jan. 19, 2006.

**436**

David A. Weinberg, David A. Weinberg, P.S.C., Lexington, Counsel for Appellant.

Thomas L. Travis, Chadwick A. Wells, Clark & Ward, Lexington, Counsel for Appellee.

Victor B. Maddox, Tachau Maddox Hovious & Dickens PLC, Louisville, Counsel for Amici Curiae, League of American Bicyclists, Louisville Bicycle Club, Ashland Cycling Enthusiasts, Inc., Bluegrass Cycling Club, Bowling Green League of Cyclists, and Chain Reaction Cycling Club of Paducah.

Opinion of the Court by Justice JOHNSTONE.

On May 29, 1999, Appellant, Nollaig Previs, was riding her bicycle on the right-hand side of Escondida Road in Bourbon County, when she was approached from behind by a vehicle driven by Appellee, Pete Dailey. Dailey was driving a pick-up truck with an eight-foot bed and camper top that was pulling two flatbed wagons, making the total length of the vehicle approximately forty-eight feet. When Dailey first observed Previs, she was pedaling up a hill at a speed of approximately one or two miles per hour. When Previs crested the top of the hill, Dailey moved his truck over into the left lane of the road to pass Previs. Assuming he had passed her, Dailey maneuvered his truck back into the right-hand lane. As he did so, the handlebars of Previs's bike became wedged under the second flatbed wagon. The bike was pulled under the wagon and Previs was thrown into a ditch on the side of the road.

Previs subsequently filed a personal injury action against Dailey in the Bourbon Circuit Court seeking damages. A one-day trial was held on November 8, 2001. The trial court denied both parties' motions for a directed verdict, and the case was thereafter submitted to the jury, which returned a verdict in favor of Dailey.

The following day, the trial judge received a telephone call from the jury foreman, Jeffery Norkus, who expressed concerns about the jury's deliberations. Norkus subsequently drafted a letter in which he alleged that jurors had discussed a matter not presented at trial, namely whether a reasonable bicyclist would have pulled off of the side of the road to allow a large vehicle to pass. Norkus later gave a similar statement in chambers under oath, in which he further stated that to his knowledge there was no discussion as to whether Dailey violated his duties. When asked how the ten jurors who found for Dailey reached their verdict, Norkus responded, "I cannot speak for them. I don't know how they arrived at their conclusion." Notably, Norkus was not one of the ten jurors who found in favor of Dailey.

As a result, Previs filed several motions, including a motion for a new trial based on juror misconduct and a motion for judgment notwithstanding the verdict, as well as a motion to alter, amend, or vacate the judgment. All were denied and Previs appealed to the Court of Appeals.

Affirming the trial court, the Court of Appeals acknowledged that "at first blush," the record contained evidence sufficient for the jury to conclude that Dailey had operated his truck in a negligent fashion. "It is uncontroverted that [Dailey] had not fully passed Previs before directing his vehicle back into the right lane, and he all but admitted that he did not look in his rear view mirror when doing so." (Opinion p. 438). Notwithstanding, the court held:

> [I]t is still possible that the jury reasonably concluded either that [Dailey] was not negligent, or if he was negligent that

said negligence was not the cause of the collision. Dailey notes that Previs was not an experienced cyclist, that she may have accelerated while Dailey's vehicle was passing her, and that she stated that she did not see him. While much of this is speculative, the law required the trial judge to give Dailey every fair and reasonable inference from the evidence. In so doing, the trial judge properly denied Previs's motion for a directed verdict, and we find no basis for tampering with this ruling. For the same reason, we conclude that Previs was not entitled to a judgment notwithstanding the verdict.

*Id.* (Internal citations omitted).

This Court thereafter granted Previs's motion for discretionary review. For the reasons set forth herein, we now reverse the decision of the Court of Appeals and remand the matter to the trial court for further proceedings consistent with this opinion.

■ Our law is well settled that in ruling on a motion for a directed verdict, the trial court is under a duty to consider the evidence in the light most favorable to the party opposing the motion, and must give the opposing party the advantage of every fair and reasonable inference that can be drawn from the evidence. *See Taylor v. Kennedy,* 700 S.W.2d 415 (Ky.App.1985). When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. *Meyers v. Chapman Printing Co., Inc.,* 840 S.W.2d 814 (Ky. 1992). In *Lewis v. Bledsoe Surface Min-*

*ing Co.,* 798 S.W.2d 459, 461–62 (Ky.1990), this Court stated:

Upon review of the evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for directed verdict. All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence. Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is " 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.' " *NCAA v. Hornung,* 754 S.W.2d 855, 860 (Ky.1988). If the reviewing court concludes that such is the case, it is at liberty to reverse the judgment on the grounds that the trial court erred in failing to sustain the motion for directed verdict. Otherwise, the judgment must be affirmed.

(Internal citations omitted). *See also USAA Casualty Insurance Co. v. Kramer,* 987 S.W.2d 779 (Ky.1999), and *Bierman v. Klapheke,* 967 S.W.2d 16 (Ky.1998).

■ Dailey's legal duties as a passing motorist were set forth in jury Instruction No. 3,[1] which provided as follows:

[I]t was the duty of the Defendant, Pete Dailey, upon the occasion about which you have just heard evidence, in driving his automobile to exercise ordinary care for his own safety and for the safety of

---

1. Instruction No. 3 was based, in part, upon language contained in KRS 189.340(1): "Vehicles overtaking other vehicles proceeding in the same direction shall pass to the left of them and shall not again drive to the right until reasonably clear of those vehicles."

other persons using the roadway, and this general duty included the following specific duties:

1. To keep said automobile under reasonable control;

2. To drive and keep his automobile on the right-hand side of the roadway, and not to pass the Plaintiff on her bicycle moving in the same direction ahead of him unless the overtaking and passing could be completed without interfering with the safe operation of the bicycle ridden by the Plaintiff;

3. After passing the Plaintiff to not drive to the right until reasonably clear of her;

4. To maintain a lookout both to the front and to the rear for other vehicles near enough to be affected by the intended movement of his automobile;

5. To exercise ordinary care to avoid collision with other automobiles on the roadway.

Thus, Dailey's legal duty required that he not pass Previs unless he could do so without interfering with the safe operation of her bicycle, and that if, in fact, he did pass her that he not drive to the right until he was reasonably clear of her.

Yet, Dailey's own testimony established that he violated this legal duty:

[I]f I made any mistake, that was it, because *if I had looked* in my rearview mirror, at me making a turn in like this, I wouldn't have probably seen Nollaig anyhow .... My thought is, when I pass a grown person—whether it be a lady or a man—I have no thought of trying to protect her .... I mean, once I started passing her, I felt it would be her obligation to allow me around her.

(Emphasis added).

The Court of Appeals commented that Dailey "all but admitted" that he did not look in his rearview mirror before maneuvering his truck back into the right lane. To the contrary, we are of the opinion that Dailey's testimony is nothing less than a frank admission of his failure to ascertain Previs's location. Apparently, Dailey believed that it was solely Previs's obligation to make sure he safely passed her. Clearly that is not the law. *See* KRS 189.340(1). Nor are we sympathetic to Dailey's claim that he had no choice but to move back into the right lane so as to avoid a potential collision with oncoming traffic. If the terrain was such that Dailey could not see oncoming traffic, then he certainly was in violation of his duty to exercise ordinary care for the safety of other persons using the roadway. *See* KRS 189.340(4).[2]

In *Bierman*, we noted:

In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence. A reviewing court is rarely in as good a position as the trial judge who presided over the initial trial to decide whether a jury can properly consider the evidence presented. Generally, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ.

---

2. KRS 189.340(4) provides:

No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless the left side is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet (100′) of any vehicle approaching from the opposite direction.

967 S.W.2d at 18–19. The evidence presented at trial was uncontroverted that Dailey had not fully passed Previs at the time he maneuvered his truck back into the right lane. Such is a clear violation of Dailey's statutory duties and constitutes negligence *per se.*

The Court of Appeals referenced several speculative, self-serving comments by Dailey concerning Previs's inexperience with biking and his "belief" that she must have accelerated as he tried to pass her, as evidence from which a jury could have reasonably found that Dailey was not negligent. In doing so, however, the court failed to recognize that Previs's negligence, if any, did not have any bearing on the fact that Dailey was negligent as a matter of law. Viewing the facts even in the light most favorable to Dailey, the trial court erred in submitting the question of Dailey's negligence to the jury, and we must conclude that the jury's verdict absolving him of liability was so flagrantly and palpably against the weight of the evidence as to indicate that it was reached as a result of passion or prejudice. *See Lewis, supra.*

■ We hold that the trial court should have granted Previs a directed verdict on the issue of Dailey's negligence. However, a jury is still entitled to consider Previs's duties in operating her bicycle, and apportion fault should it find that Previs was negligent as well. The jury was given instructions on both Previs's duties and apportionment, but was directed not to consider them upon finding for Dailey. On remand, a jury must consider these additional issues.

■ Our resolution of the first issue renders moot Previs's argument concerning the trial court's failure to grant a new trial based upon juror Norkus's allegations of juror misconduct. Nevertheless, we agree with the Court of Appeals that the trial court did not err in this respect. Previs concedes that it is fairly well settled in this Commonwealth that, with few exceptions, a verdict cannot be impeached by the testimony of a juror. *Rietze v. Williams,* 458 S.W.2d 613 (Ky.1970), *overruled on other grounds* in *Centre College v. Trzop,* 127 S.W.3d 562, 566 (Ky.2003); *Doyle v. Marymount Hospital, Inc.,* 762 S.W.2d 813 (Ky.App.1988). As noted by the Court of Appeals, to allow a juror to single-handedly overturn a verdict after it has been rendered "would invite the very kind of mischief the [CR 59.01 new trial] rule was designed to obviate." *Id.* at 815.

The decision of the Court of Appeals is reversed and this matter is remanded to the Bourbon Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, ROACH, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents without opinion.